**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| BERNADETTE WILLIAMS, AKEIWA DOYLE, RICK MCCONNELL, ROSILYN WILSON, LINDA LEWIS, LATASHA HUFF, MARIA MUNOZ, KIMBERLY BENSON, EVELYN BROWN, MICHELLE SNYDER, KAYLA SHANKS, RICHARD DACHEFF, KATHRYN LUCKEY, DIANE NEWKIRK, SANDRA SMILING, MATTHEW ALFLEN, ROQUE ESPINOZA, LATISHIA BOWDEN, DJ NEILL and THERESA BUDRIS, themselves and on behalf of all others similarly situated, | Case No. 1:21-cv-05211 <br><br> **CLASS ACTION** <br><br> **JURY TRIAL DEMANDED** |
| Plaintiffs, | |
| v. | |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, an Illinois corporation, | |
| Defendant. | |

**FIRST AMENDED CLASS ACTION COMPLAINT**

Plaintiffs, by and through undersigned counsel, bring this class action, individually and on behalf of all others similarly situated, against State Farm Mutual Automobile Insurance Company ("Defendant"), and allege as follows:

**INTRODUCTION**

1. This class action lawsuit arises from Defendant's deceptive, fraudulent, and unfair scheme through which Defendant systematically undervalues total-loss vehicles in order to arbitrarily reduce the ultimate payment to insureds who make total loss claims under insurance policies issued by Defendant.

2.      In the event of a "total loss" to an insured vehicle—*i.e.*, where repair of the vehicle is impossible or uneconomical—Defendant's uniform insurance policies with Plaintiff and all putative Class members (defined below) promises to pay for the loss, limited to the actual cash value ("ACV") of the vehicle. Attached as **Exhibit A** are copies of each Plaintiff's Policy ("Policy"), which are materially identical to the policies that provides coverage to all members of the putative Classes (defined below).

3.      Defendant ignores and avoids its straightforward contractual obligation by directing or relying on its third-party vendor to systematically reduce total loss evaluations. Specifically, to determine the amount of Defendant's total-loss payments to insureds, Defendant's third-party vendor identifies the price of comparable vehicles listed for sale in the relevant market. *After* the vendor determines the value of the comparable vehicles, Defendant's vendor applies an arbitrary and baseless flat-rate adjustment to the value of each "comparable vehicle," which Defendant and its vendor call a "typical negotiation adjustment."

4.      The "typical negotiation adjustment" is not based on any negotiations, typical or otherwise, and is not based on any market realities. Rather the "typical negotiation adjustment" ranges from 4-11% of the value of the "comparable vehicle." The vehicles with lesser value are subject to a greater percentage reduction, with the percentage adjustment becoming lower as the value of the "comparable vehicles" increases. This percentage reduction artificially reduces the total-loss payment for the totaled vehicle and, with the sliding percentage scale, ensures that every total loss payment Defendant makes to insureds is significantly, but unconscionably, reduced.

5.      An integral part of Defendant's fraudulent scheme is a provision of the Policy that requires the parties to submit to an appraisal if there is a disagreement over the ACV. The appraisal provision requires the insured and the insurer to each hire, ***at their own expense***, an appraiser, and

to bear equally the expenses of an umpire selected by the two appraisers, as well as any other expenses of the appraisal. Since the amount by which the insureds' total-loss claims are underpaid is likely less (or only marginally greater) than the cost of the appraisal, Defendant knows and intends that the insureds will forego the appraisal process and accept the artificially determined loss-payment for their total-loss claims. As designed by Defendant, the appraisal provision prevents Plaintiffs and the Class from effectively vindicating their rights under the Policy.

6. To be clear, this case does not present a dispute about ACV, which Defendant never determines. Rather, this case challenges Defendant's systematic and fraudulent scheme to mis-value insureds' vehicles that are declared a total loss in a manner which does not comport with representations made by Defendant or obligations undertaken by Defendant in its Policy, in order to illegally increase its own profits. This is an issue that cannot be resolved through an appraisal process.

7. Moreover, the Policy is an unconscionable contract that was unilaterally drafted by Defendant with full knowledge of the unfair scheme it intended to employ to artificially reduce the value of its insured's vehicles, and neither Plaintiffs nor the members of the Class had any roll in drafting its terms.

8. Through Defendant's deceptive, fraudulent, and unfair scheme, Defendant violated consumer protection laws, including the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.*, breached its contracts and the covenant of good faith and fair dealing with its insureds, and was unjustly enriched.

9. As a result of Defendant's deceptive, fraudulent, and unfair scheme, Plaintiffs did not receive the benefit of the bargain, and thus sustained actual damages.

10.     By this action, Plaintiffs, individually and on behalf of the Class, seek damages and injunctive and declaratory relief.

## PARTIES

### A.     Plaintiffs

11.     Plaintiff Bernadette Williams, at all relevant times, was an Alabama citizen. Williams owned a 2010 Toyota Camry LE 4 door sedan that was insured under a Policy issued by Defendant, which was deemed a total loss on or around June 7, 2018. Williams made a claim with Defendant for the total loss of the vehicle. Defendant provided a total loss valuation to Williams for the total loss claim. Defendant based its offer upon a valuation report obtained from Audatex. Defendant valued Williams' total loss claim at $8,792.72 and paid Williams that amount. The market valuation report listed values of two different comparable vehicles and shows that Defendant and its vendor applied a "typical negotiation adjustment" of approximately 7-8% to all comparable vehicles without itemizing or explaining the basis of each adjustment and/or how the value of the deduction was determined. *See* Plaintiff's Market Value Report at 4-5, attached as **Exhibit B.**

12.     Plaintiff Akeiwa Doyle, at all relevant times, was an Arizona citizen. Doyle owned a 2009 Toyota Camry Hybrid 4 door sedan that was insured under a Policy issued by Defendant, which was deemed a total loss on or around January 9, 2018. Doyle made a claim with Defendant for the total loss of the vehicle. Defendant provided a total loss valuation to Doyle for the total loss claim. Defendant based its offer upon a valuation report obtained from Audatex. Defendant valued Doyle's total loss claim at $4,079.63 and paid McConnell that amount. The market valuation report listed values of four different comparable vehicles and shows that Defendant and its vendor applied a "typical negotiation adjustment" of approximately 8-9% to all comparable vehicles without

itemizing or explaining the basis of each adjustment and/or how the value of the deduction was determined. *See* Plaintiff's Market Value Report at 4-5, attached as **Exhibit C.**

13.     Plaintiff Rick McConnell, at all relevant times, was an Arkansas citizen. McConnell owned a 2018 Kia Soul Plus 4 door hatchback that was insured under a Policy issued by Defendant, which was deemed a total loss on or around May 3, 2021. McConnell made a claim with Defendant for the total loss of the vehicle. Defendant provided a total loss valuation to McConnell for the total loss claim. Defendant based its offer upon a valuation report obtained from Audatex. Defendant valued McConnell's total loss claim at $12,785.98 and paid McConnell that amount. The market valuation report listed values of four different comparable vehicles and shows that Defendant and its vendor applied a "typical negotiation adjustment" of approximately 6% to all comparable vehicles without itemizing or explaining the basis of each adjustment and/or how the value of the deduction was determined. *See* Plaintiff's Market Value Report at 5-6, attached as **Exhibit D.**

14.     Plaintiff Rosilyn Wilson, at all relevant times, was a Delaware citizen. Wilson owned a 2005 GMC Envoy SLT 4 door wagon that was insured under a Policy issued by Defendant, which was deemed a total loss on or around November 5, 2018. Wilson made a claim with Defendant for the total loss of the vehicle. Defendant provided a total loss valuation to Wilson for the total loss claim. Defendant based its offer upon a valuation report obtained from Audatex. Defendant valued Wilson's total loss claim at $5,212.00 and paid Wilson that amount. The market valuation report listed values of four different comparable vehicles and shows that Defendant and its vendor applied a "typical negotiation adjustment" of approximately 8-9% to all comparable vehicles without itemizing or explaining the basis of each adjustment and/or how the value of the deduction was determined. *See* Plaintiff's Market Value Report at 6, attached as **Exhibit E.**

5

15.     Plaintiff Linda Lewis, at all relevant times, was a Florida citizen. Lewis owned a 2003 Kia Sorento EX 4 door wagon that was insured under a Policy issued by Defendant, which was deemed a total loss on or around November 23, 2017. Lewis made a claim with Defendant for the total loss of the vehicle. Defendant provided a total loss valuation to Lewis for the total loss claim. Defendant based its offer upon a valuation report obtained from Audatex. Defendant valued Lewis' total loss claim at $4,227.41 and paid Lewis that amount. The market valuation report listed values of two different comparable vehicles and shows that Defendant and its vendor applied a "typical negotiation adjustment" of approximately 10-11% to all comparable vehicles without itemizing or explaining the basis of each adjustment and/or how the value of the deduction was determined. *See* Plaintiff's Market Value Report at 4, attached as **Exhibit F.**

16.     Plaintiff Latasha Huff, at all relevant times, was a Georgia citizen. Huff owned a 2015 Mercedes-Benz CLA250 STD Turbo 4 door sedan that was insured under a Policy issued by Defendant, which was deemed a total loss on or around January 21, 2021. Huff made a claim with Defendant for the total loss of the vehicle. Defendant provided a total loss valuation to Huff for the total loss claim. Defendant based its offer upon a valuation report obtained from Audatex. Defendant valued Huff's total loss claim at $21,042.30 and paid Huff that amount. The market valuation report listed values of four different comparable vehicles and shows that Defendant and its vendor applied a "typical negotiation adjustment" of approximately 4-5% to all comparable vehicles without itemizing or explaining the basis of each adjustment and/or how the value of the deduction was determined. *See* Plaintiff's Market Value Report at 7-8, attached as **Exhibit G.**

17.     Plaintiff Maria Munoz, at all relevant times, was an Illinois citizen.  Munoz owned a 2020 Ford Escape SEL Turbo 4 door wagon that was insured under a Policy issued by Defendant, which was deemed a total loss on or around February 13, 2021. Munoz made a claim with

Defendant for the total loss of the vehicle. Defendant provided a total loss valuation to Munoz for the total loss claim. Defendant based its offer upon a valuation report obtained from Audatex. Defendant valued Munoz's total loss claim at $26,067.00. The market valuation report listed values of four different comparable vehicles and shows that Defendant and its vendor applied a "typical negotiation adjustment" of approximately 4% to all comparable vehicles without itemizing or explaining the basis of each adjustment and/or how the value of the deduction was determined. *See* Munoz's Market Value Report at 6-7, attached as **Exhibit H**.

18. Plaintiff Kimberly Benson, at all relevant times, was a Kansas citizen. Benson owned a 1997 Chrysler Sebring JX 2 door convertible that was insured under a Policy issued by Defendant, which was deemed a total loss on or around May 3, 2019. Benson made a claim with Defendant for the total loss of the vehicle. Defendant provided a total loss valuation to Benson for the total loss claim. Defendant based its offer upon a valuation report obtained from Audatex. Defendant valued Benson's total loss claim at $3,124.87 and paid Benson that amount. The market valuation report listed values of four different comparable vehicles and shows that Defendant and its vendor applied a "typical negotiation adjustment" of approximately 10-11% to all comparable vehicles without itemizing or explaining the basis of each adjustment and/or how the value of the deduction was determined. *See* Plaintiff's Market Value Report at 4-5, attached as **Exhibit I.**

19. Plaintiff Evelyn Brown, at all relevant times, was a Louisiana citizen. Brown owned a 2018 Toyota Corolla SE 4 door sedan that was insured under a Policy issued by Defendant, which was deemed a total loss on or around May 22, 2021. Brown made a claim with Defendant for the total loss of the vehicle. Defendant provided a total loss valuation to Brown for the total loss claim. Defendant based its offer upon a valuation report obtained from Audatex. Defendant valued Brown's total loss claim at $13,955.00 and paid Brown that amount. The market valuation

report listed values of four different comparable vehicles and shows that Defendant and its vendor applied a "typical negotiation adjustment" of approximately 4-6% to all comparable vehicles without itemizing or explaining the basis of each adjustment and/or how the value of the deduction was determined. *See* Plaintiff's Market Value Report at 5-6, attached as **Exhibit J.**

20.     Plaintiff Michelle Snyder, at all relevant times, was a Maryland citizen. Snyder owned a 2013 Volkswagen Jetta SE 4 door sedan that was insured under a Policy issued by Defendant, which was deemed a total loss on or around November 23, 2018. Snyder made a claim with Defendant for the total loss of the vehicle. Defendant provided a total loss valuation to Snyder for the total loss claim. Defendant based its offer upon a valuation report obtained from Audatex. Defendant valued Snyder's total loss claim at $5,283.50 and paid Snyder that amount. The market valuation report listed values of four different comparable vehicles and shows that Defendant and its vendor applied a "typical negotiation adjustment" of approximately 6-8% to all comparable vehicles without itemizing or explaining the basis of each adjustment and/or how the value of the deduction was determined. *See* Plaintiff's Market Value Report at 4-5, attached as **Exhibit K.**

21.     Plaintiff Richard Dacheff, at all relevant times, was a Missouri citizen. Dacheff owned a 2016 Toyota Avalon XLE 4 door sedan that was insured under a Policy issued by Defendant, which was deemed a total loss on or around February 26, 2017. Dacheff made a claim with Defendant for the total loss of the vehicle. Defendant provided a total loss valuation to Dacheff for the total loss claim. Defendant based its offer upon a valuation report obtained from Audatex. Defendant valued Dacheff's total loss claim at $22,744.50 and paid Dacheff that amount. The market valuation report listed values of two different comparable vehicles and shows that Defendant and its vendor applied a "typical negotiation adjustment" of approximately 6% to all comparable vehicles without itemizing or explaining the basis of each adjustment and/or how the

value of the deduction was determined. *See* Plaintiff's Market Value Report at 4, attached as **Exhibit L.**

22.     Plaintiff Diane Newkirk, at all relevant times, was a New York citizen. Newkirk owned a 2015 Subaru Impreza 4 door sedan that was insured under a Policy issued by Defendant, which was deemed a total loss on or around January 23, 2021. Newkirk made a claim with Defendant for the total loss of the vehicle. Defendant provided a total loss valuation to Newkirk for the total loss claim. Defendant based its offer upon a valuation report obtained from Audatex. Defendant valued Newkirks's total loss claim at $10,887.52 and paid that amount. The market valuation report listed values of four different comparable vehicles and shows that Defendant and its vendor applied a "typical negotiation adjustment" of approximately 4-6% to all comparable vehicles without itemizing or explaining the basis of each adjustment and/or how the value of the deduction was determined. *See* Plaintiff's Market Value Report at 5-6, attached as **Exhibit M.**

23.     Plaintiff Sandra Smiling, at all relevant times, was a North Carolina citizen. Smiling owned a 2014 Nissan Altima 4 door sedan that was insured under a Policy issued by Defendant, which was deemed a total loss on or around August 1, 2019. Smiling made a claim with Defendant for the total loss of the vehicle. Defendant provided a total loss valuation to Smiling for the total loss claim. Defendant based its offer upon a valuation report obtained from Audatex. Defendant valued Smiling's total loss claim at $5,181.00 and paid that amount. The market valuation report listed values of four different comparable vehicles and shows that Defendant and its vendor applied a "typical negotiation adjustment" of approximately 6-8% to all comparable vehicles without itemizing or explaining the basis of each adjustment and/or how the value of the deduction was determined. *See* Plaintiff's Market Value Report at 5-6, attached as **Exhibit N.**

24.     Plaintiff Matthew Alflen, at all relevant times, was an Ohio citizen. Alflen owned a 2005 Chrysler 300 Limited 4 door sedan that was insured under a Policy issued by Defendant, which was deemed a total loss on or around September 28, 2020. Alflen made a claim with Defendant for the total loss of the vehicle. Defendant provided a total loss valuation to Alflen for the total loss claim. Defendant based its offer upon a valuation report obtained from Audatex. Defendant valued Alflen's total loss claim at $5,641.84 and paid Alflen that amount. The market valuation report listed values of four different comparable vehicles and shows that Defendant and its vendor applied a "typical negotiation adjustment" of approximately 8-10% to all comparable vehicles without itemizing or explaining the basis of each adjustment and/or how the value of the deduction was determined. *See* Plaintiff's Market Value Report at 5-6, attached as **Exhibit O.**

25.     Plaintiff Roque Espinoza, at all relevant times, was a Pennsylvania citizen. Espinoza owned a 2016 Hyundai Sonata SE 4 door sedan that was insured under a Policy issued by Defendant, which was deemed a total loss on or around October 10, 2020. Espinoza made a claim with Defendant for the total loss of the vehicle. Defendant provided a total loss valuation to Espinoza for the total loss claim. Defendant based its offer upon a valuation report obtained from Audatex. Defendant valued Espinoza's total loss claim at $8,372.60 and paid Espinoza that amount. The market valuation report listed values of four different comparable vehicles and shows that Defendant and its vendor applied a "typical negotiation adjustment" of approximately 6% to all comparable vehicles without itemizing or explaining the basis of each adjustment and/or how the value of the deduction was determined. *See* Plaintiff's Market Value Report at 5-6, attached as **Exhibit P.**

26.     Plaintiff Latishia Bowden, at all relevant times, was a Tennessee citizen. Bowden owned a 2015 Chevrolet Malibu 1LT 4 door sedan that was insured under a Policy issued by

Defendant, which was deemed a total loss on or around November 27, 2020. Bowden made a claim with Defendant for the total loss of the vehicle. Defendant provided a total loss valuation to Bowden for the total loss claim. Defendant based its offer upon a valuation report obtained from Audatex. Defendant valued Bowden's total loss claim at $13,990.79 and paid Bowden that amount. The market valuation report listed values of four different comparable vehicles and shows that Defendant and its vendor applied a "typical negotiation adjustment" of approximately 6% to all comparable vehicles without itemizing or explaining the basis of each adjustment and/or how the value of the deduction was determined. *See* Plaintiff's Market Value Report at 5-6, attached as **Exhibit Q.**

27.      Plaintiff DJ Neill, at all relevant times, was a Texas citizen. Neill owned a 2009 Mazda Mazda3 i Touring 4 door sedan that was insured under a Policy issued by Defendant, which was deemed a total loss on or around September 8, 2020. Neill made a claim with Defendant for the total loss of the vehicle. Defendant provided a total loss valuation to Neill for the total loss claim. Defendant based its offer upon a valuation report obtained from Audatex. Defendant valued Neill's total loss claim at $3,861.50 and paid Neill that amount. The market valuation report listed values of four different comparable vehicles and shows that Defendant and its vendor applied a "typical negotiation adjustment" of approximately 10% to all comparable vehicles without itemizing or explaining the basis of each adjustment and/or how the value of the deduction was determined. *See* Plaintiff's Market Value Report at 4-5, attached as **Exhibit R.**

28.      Plaintiff Theresa Budris, at all relevant times, was a Wisconsin Citizen. Budris owned a 2017 Chevrolet Traverse Premier 4 door wagon that was insured under a Policy issued by Defendant, which was deemed a total loss on or around February 17, 2020. Budris made a claim with Defendant for the total loss of the vehicle. Defendant provided a total loss valuation to Budris

for the total loss claim. Defendant based its offer upon a valuation report obtained from Audatex. Defendant valued Budris's total loss claim at $31,158.36 and paid that amount. The market valuation report listed values of two different comparable vehicles and shows that Defendant and its vendor applied a "typical negotiation adjustment" of approximately 4% to all comparable vehicles without itemizing or explaining the basis of each adjustment and/or how the value of the deduction was determined. *See* Plaintiff's Market Value Report at 5, attached as **Exhibit S.**

### B. Defendant

29.     Defendant State Farm Mutual Automobile Insurance Company is an Illinois company with its principal place of business in Illinois. Defendant provides insurance coverage throughout the United States for first-party property damage under collision and/or comprehensive coverage.

### JURISDICTION AND VENUE

30.     This Court has personal jurisdiction over Defendant because Defendant directs, markets, and provides its business activities throughout the State of Illinois, and makes its insurance services available to residents of Illinois. Further, this Court has personal jurisdiction over Defendant because Defendant's tortious conduct against Plaintiffs occurred in substantial part within this District and because Defendant committed the same wrongful acts to other individuals within this judicial District, such that some of Defendant's acts have occurred within this District, subjecting Defendant to jurisdiction here.

31.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2) because at least one member of the putative class, including certain Plaintiffs, are citizen of states outside Illinois, and Defendant is a citizen of Illinois, thus CAFA's minimal diversity requirement is met. Additionally, Plaintiffs seek an award of damages (including actual, compensatory, statutory, and

punitive, as provided by law) and restitution to Plaintiffs and the Class in an amount to be determined at trial, for each violation, which, when aggregated among a proposed class of potential thousands, exclusive of interests and costs, exceeds the $5,000,000 threshold for federal jurisdiction under the Class Action Fairness Act ("CAFA").

32.     Venue is proper in this District pursuant to 28 U.S.C. §§1391(b) and (c) because Defendant is deemed to reside in any judicial district in which it is subject to personal jurisdiction, and because a substantial part of the events giving rise to the claim occurred in this District, and because Plaintiff was injured in this District.

## FACTUAL ALLEGATIONS

**"Typical Negotiation"**

33.     When valuing total-loss automobile claims, insurance companies like Defendant use third party companies to determine and pay the ACV of an insured's totaled vehicle subject only to reduction for any policy deductible.

34.     To avoid full payment under its policies, Defendant has devised a blatant and unlawful scheme to reduce its total-loss payments to insureds, by use of a deceptive, arbitrary and baseless "typical negotiation adjustment."

35.     Specifically, Defendant purports to determine the ACV of total-loss vehicles via a third-party vendor, Audatex or AudaExplore, through a system called Autosource Market-Driven Valuation ("Autosource"). The Autosource system identifies the price of comparable vehicles sold or listed for sale online in the relevant market. Autosource then, at Defendant's directive, applies a deceptive and arbitrary "typical negotiation adjustment" to the value of the comparable vehicles before determining the total-loss payment Defendant will make.

36.     Defendant's "typical negotiation adjustment" is arbitrary and unsupportable. When offering the total-loss payment to an insured whose car was totaled, Defendant represents that the "typical negotiation adjustment" reflects some sort of average difference between a dealer list price and "what the dealer would be willing" to sell it for. *See* Ex. B at 5 ("The selling price *may* be substantially less than the asking price. When indicated, the asking price has been adjusted to account for typical negotiation according to each comparables [sic] price."). However, this disclosure is never made prior to determining the total-loss payment Defendant will make.

37.     Moreover, the across-the-board 4-11% reduction on used vehicles' internet prices is based on no negotiations, typical or otherwise, and does not reflect market realities, and neither relevant state insurance laws and regulations nor the Policy permit Defendant to make this arbitrary deduction. Indeed, Defendant applies the "typical negotiation adjustment" without contacting the identified dealerships or sellers, or considering whether the online retailer ever discounts its vehicles. Notably, in applying a universal percentage-based "typical negotiation adjustment" reduction, Defendant failed to consider that it is increasingly the practice in the used car market to avoid price negotiation by implementing "no haggle" pricing, particularly as to internet-posted prices.[1]  Indeed, in addition, particularly during the COVID-19 pandemic, and the related supply chain problems with parts such as electronics for vehicles, used cars have been selling for a premium, with sale price typically *increasing* from posted price if it changes at all.[2]

---

[1]  *See, e.g.*, https://www.autonationlincolnclearwater.com/autonation-one-price.htm (last visited Sept. 24, 2021) ("Not only is our no-haggle price low, it's guaranteed."); https://www.carmax.com/about-carmax (last visited May September 26, 2021) ("our 'no-haggle' prices transformed car buying and selling from a stressful, dreaded event into the honest, straightforward experience all people deserve.").

[2]  *See*     https://www.cnbc.com/2021/08/07/used-car-prices-to-stay-high-until-automakers-fix-production-issues.html (last visited Sept. 16, 2021); https://abc7chicago.com/car-chip-shortage-2021-prices-auto-gm-closes-factories/11005980/ (last visited Sept. 16, 2021).

38.     Rather, the arbitrary "typical negotiation adjustment," ranging from 4-11% of the value of the comparable vehicle is keyed only to the value of that vehicle, as the value of the "comparable vehicles" increases. This sliding percentage scale does not reflect "actual value" of the vehicle vehicles or any "typical negotiation," but rather is meant to ensure that Defendant's total loss payments are significantly reduced, even when a vehicle is not valuable.

39.     Plaintiffs do not contest the vehicles Defendant selected to use as comparable vehicles. Plaintiffs do not contest Defendant's representations of the listed price of comparable vehicles. Plaintiffs do not contest the value assigned to differences in trim, condition, mileage, packages, and equipment between comparable vehicles and the total-loss vehicle. What Plaintiffs contest is that Defendant instructed Audatex to apply arbitrary, capricious, and invalid "typical negotiation" adjustment across-the-board in determining its total-loss payments.

**Defendant's Deceptive and Unfair Appraisal Process**

40.     An integral part of Defendant's fraudulent scheme is a provision of Policy which requires the parties to submit to an appraisal if there is a disagreement over the ACV (which Defendant never determines). The appraisal provision requires the insured and the insurer to each hire, at their own expense, an appraiser and to bear equally the expenses of an umpire selected by the two appraisers, as well as any other expenses of the appraisal. Since the amount by which the insureds' total-loss claims are underpaid is likely less than the cost of the appraisal, Defendant knows that the insureds will forego the appraisal process and accept the artificially reduced ACV of the vehicle for their total-loss claims. As designed, the appraisal clause prevents plaintiff and the Class from effectively vindicating their statutory and common law causes of action.

41.     To be clear, this case does not present a dispute about ACV, which Defendant never determines. Rather, this case challenges Defendant's fraudulent scheme to illegally undervalue

insureds' vehicles that are declared a total loss, in order to increase its own profits. This is an issue that cannot be resolved through an appraisal process that is part of that very scheme.

42.     Moreover, the Policy is an unconscionable contract of that was unilaterally drafted by Defendant with full knowledge of the unfair scheme it intended to employ to artificially reduce the value of its insured's vehicles, and neither Plaintiffs nor the members of the Class had any roll in drafting its terms.

## APPLICATION OF ILLINOIS LAW NATIONWIDE

43.     The application of Illinois law as the substantive basis for relief for Defendant's violations of the rights of Plaintiffs and each of the members of the proposed national class (as opposed to interpretation of the insurance policies) is appropriate because Illinois retains the most significant relationship to the occurrence and the parties.

44.     Defendant's principal place of business is in Illinois, and Defendant's deceptive scheme was developed in, and emanated from, Illinois.

45.     The form insurance Policies Defendant used to carry out its scheme were developed and drafted in Illinois.

46.     Illinois has a strong interest in regulating the conduct of companies headquartered in Illinois, particularly when they engage in fraud on a systematic and national level.

47.     The application of Illinois law to a national class will not present any difficulty.

## CLASS ACTION ALLEGATIONS

48.     Plaintiffs bring this action individually and as a class action under Fed. R. Civ. P 23(a) and (b), on behalf of the following proposed Multistate Class ("Multistate Class"):

> All persons insured by Defendant in any state who, from the earliest allowable time through the date of resolution of this action, received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similar adjustment.

49.     If necessary, and in the alternative, Plaintiffs bring this action on behalf of the following proposed State Subclasses:

**The Alabama Subclass**. All Alabama citizens insured by Defendant who, from the earliest allowable time through the date of resolution of this action, received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similar adjustment.

**The Arizona Subclass**. All Arizona citizens insured by Defendant who, from the earliest allowable time through the date of resolution of this action, received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similar adjustment.

**The Arkansas Subclass**. All Arkansas citizens insured by Defendant who, from the earliest allowable time through the date of resolution of this action, received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similar adjustment.

**The Delaware Subclass**. All Delaware citizens insured by Defendant who, from the earliest allowable time through the date of resolution of this action, received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similar adjustment.

**The Florida Subclass**. All Florida citizens insured by Defendant who, from the earliest allowable time through the date of resolution of this action, received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similar adjustment.

**The Georgia Subclass**. All Georgia citizens insured by Defendant who, from the earliest allowable time through the date of resolution of this action, received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similar adjustment.

**The Illinois Subclass.** All Illinois citizens insured by Defendant who, from the earliest allowable time through the date of resolution of this action, received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similar adjustment.

**The Kansas Subclass**. All Kansas citizens insured by Defendant who, from the earliest allowable time through the date of resolution of this action, received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similar adjustment.

**The Louisiana Subclass**. All Louisiana citizens insured by Defendant who, from the earliest allowable time through the date of resolution of this action, received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similar adjustment.

**The Maryland Subclass**. All Maryland citizens insured by Defendant who, from the earliest allowable time through the date of resolution of this action, received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similar adjustment.

**The Missouri Subclass**. All Missouri citizens insured by Defendant who, from the earliest allowable time through the date of resolution of this action, received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similar adjustment.

**The New York Subclass**. All New York citizens insured by Defendant who, from the earliest allowable time through the date of resolution of this action, received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similar adjustment.

**The North Carolina Subclass.** All North Carolina citizens insured by Defendant who, from the earliest allowable time through the date of resolution of this action, received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similar adjustment.

**The Ohio Subclass**. All Ohio citizens insured by Defendant who, from the earliest allowable time through the date of resolution of this action, received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similar adjustment.

**The Pennsylvania Subclass**. All Arkansas citizens insured by Defendant who, from the earliest allowable time through the date of resolution of this action, received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similar adjustment.

**The Tennessee Subclass**. All Arkansas citizens insured by Defendant who, from the earliest allowable time through the date of resolution of this action, received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similar adjustment.

**The Texas Subclass**. All Texas citizens insured by Defendant who, from the earliest allowable time through the date of resolution of this action, received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similar adjustment.

**The Wisconsin Subclass**. All Wisconsin citizens insured by Defendant who, from the earliest allowable time through the date of resolution of this action, received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similar adjustment.

50.     Unless otherwise stated, the Multistate Class and the alternative State Subclasses are collectively referred to as the "Class."

51.     Excluded from the Class are Defendant and any of its members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; governmental entities; and the Judge(s) and Court staff assigned to this case and their immediate family members.

52.     Plaintiffs reserve their right to amend the Class definitions if discovery and further investigation reveal that any Class should be expanded or narrowed, divided into additional subclasses under Rule 23(c)(5), or modified in any other way

53.     **Numerosity.**  The members of the Class are so numerous that individual joinder of all Class members is impracticable. While Plaintiffs are informed and believe that there are thousands of Class members, the precise number is unknown to Plaintiffs but may be ascertained from Defendant's books and records. Class members may be notified of the pendency of this action by recognized Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

54.     **Commonality and Predominance.** This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

a. whether Defendant's practice of applying a "typical negotiation adjustment" in determining total-loss payments results is a breach of its obligation to pay ACV;

b. whether Defendant's failure to disclose its use and use of a "typical negotiation adjustment" when determining total-loss payments for a totaled vehicle until such an assessment is made is deceptive to a reasonable consumer, unconscionable or otherwise a violation of the relevant consumer protection statute(s);

c. whether Defendant's practice of applying a "typical negotiation adjustment" in determining total-loss payments results is a breach of its obligation to pay ACV breached the covenant of good faith and fair dealing it has with Plaintiffs and the other Class members;

d. Whether Defendant was unjustly enriched at the expense of Plaintiff and the other Class members as a result of its conduct

e. whether Plaintiffs and the Class are entitled to injunctive relief based on Defendant's conduct; and

f. whether Plaintiffs and the Class are entitled to damages and the measure of damages owed to them.

55.     **Typicality.** Plaintiffs' claims are typical of the other Class members' claims because Defendant undertook the same practice of applying a "typical negotiation adjustment" in determining total-loss payments under materially similar policy provisions requiring payment of ACV. Plaintiffs' claims are based upon the same legal theories as those of the other Class members. Plaintiffs and the other Class members sustained damages as a direct and proximate result of the same wrongful practices in which Defendant engaged. Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the other Class members.

56. **Adequacy of Representation.** Plaintiffs are adequate representatives of the Class because Plaintiffs' interests do not conflict with the interests of the other Class members whom they seek to represent, Plaintiffs have retained counsel competent and experienced in complex class action litigation, including successfully litigating class action cases similar to this one, where insurers breached contracts with insureds. The interests of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

57. **Superiority.** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, such that it would be impracticable for the Class members to individually seek redress for Defendant's wrongful conduct. Even if the Class members could afford litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

# I. CAUSES OF ACTION ASSERTED ON BEHALF OF THE NATIONWIDE CLASS

## COUNT 1

### VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT 815 ILCS, 505/1, *et seq.*

58. Plaintiffs repeat and re-allege all previously alleged paragraphs as if fully alleged herein.

59.     Plaintiffs bring this claim individually and on behalf of the Multistate Class (for purposes of this Count, the "Class").

60.     Defendant, Plaintiffs, and the Class members are "persons" within the meaning of 815 ILCS 505/l(c).

61.     Plaintiffs and the Class members are "consumers" within the meaning of 815 ILCS 505/1(e).

62.     Defendant was and is engaged in "trade" or "commerce" within the meaning of 815 ILCS 505/1(f).

63.     The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFA") prohibits "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of trade or commerce . . . whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2.

64.     As alleged herein, Defendant, through its agents, employees, and/or subsidiaries, violated the Illinois CFA by knowingly and intentionally concealing and failing to disclose material facts regarding its application of an arbitrary "typical negotiation adjustment" to comparable vehicles in order to reduce their market value and, as a result, the amount of Defendant's ACV payment to insureds, as detailed above.

65.     By knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding its application of an arbitrary "typical negotiation adjustment" to comparable vehicles, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Illinois CFA.

66.     Defendant's misrepresentations and omissions regarding its application of an arbitrary "typical negotiation adjustment" to comparable vehicles were made to Plaintiffs and the Class members in a uniform manner.

67.     Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppression of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about Defendant's application of an arbitrary "typical negotiation adjustment" to comparable vehicles in order to reduce the amount of Defendant's total-loss payments to its insureds.

68.     The facts regarding Defendant's application of an arbitrary "typical negotiation adjustment" to comparable vehicles that Defendant knowingly and intentionally misrepresented, omitted, concealed, and/or failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Defendant's insurance coverage.

69.     Plaintiffs and Class members had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant had concealed or failed to disclose. Plaintiffs and Class members did not, and could not, unravel Defendant's deception on their own.

70.     Defendant had an ongoing duty to Plaintiffs and the Class members to refrain from engaging in unfair or deceptive practices under the Illinois CFA in the course of its business. Specifically, Defendant owed Plaintiff and Class members a duty to disclose all the material facts concerning its application of an arbitrary "typical negotiation adjustment" to comparable vehicles because Defendant possessed exclusive knowledge of those facts, it intentionally concealed those

facts from Plaintiffs and the Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

71.     Plaintiffs and the Class members were aggrieved by Defendant's violations of the Illinois CFA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts regarding its application of an arbitrary "typical negotiation" to comparable vehicles, including that the "typical negotiation adjustment" is arbitrarily selected and applied in an inconsistent manner designed to decrease Defendant's total-loss payments under the Policy.

72.     Plaintiffs and the Class members purchased Defendant's insurance coverage in reliance on Defendant's misrepresentations, omissions, concealments, and/or failures to disclose material facts regarding its promise to pay ACV in the event of a total loss and Defendant's application of an arbitrary "typical negotiation adjustment" to comparable vehicles to artificially reduce its total-loss payments to insureds.

73.     Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and Class members would not have purchased insurance coverage from Defendant, or would not have paid as much for such coverage and, thus, they did not receive the benefit of the bargain and/or they suffered out-of-pocket loss.

74.     Defendant's violations of the Illinois CFA present a continuing risk of future harm to Plaintiffs and the Class members.

75.     Plaintiffs and the Class members seek an order enjoining Defendant's unfair and deceptive acts or practices in violation of the Illinois CFA and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Illinois CFA.

## COUNT 2

## BREACH OF CONTRACT

76.     Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Count, as if fully alleged herein.

77.     Plaintiffs bring this claim individually and on behalf of the Multistate Class (for purposes of this Count, the "Class").

78.     Plaintiffs and each of the other Class members were insured under a policy issued by Defendant, as described herein.

79.     Plaintiffs and each of the other Class members made claims under their insurance contracts, which Defendant determined to be first-party total losses under the insurance contract, and additionally determined to be covered claims.

80.     Pursuant to the above-described contractual provisions, upon the total loss of their insured vehicles, Defendant purported to pay Plaintiffs and each of the other Class members the ACV of their totaled vehicles.

81.     Defendant, however, failed to pay the ACV of Plaintiffs' and Class members' vehicles because Defendant applied an arbitrary and capricious "typical negotiation adjustment" to comparable vehicles in order to reduce their market value and, as a result, Defendant's total-loss payments to insureds.

82.      Thus, Defendant failed to pay Plaintiffs and each of the other Class members the promised ACV of their total-loss vehicles and thereby breached its contract with Plaintiffs and each of the other Class members.

83.    As a result of such contractual breaches, Plaintiffs and each of the other Class members have been damaged and are entitled to recover damages, as well as costs, pre-judgment and post-judgment interest, injunctive relief, and other relief as appropriate.

### COUNT 3

### BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

84.    Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

85.    Plaintiffs bring this claim individually and on behalf of the Multistate Class (for purposes of this Count, the "Class").

86.    Every contract, including the Policy, contains an implied covenant of good faith and fair dealing. The purpose of this duty is to ensure that parties do not take advantage of each other in a way that could not have been contemplated at the time the contract was drafted or do anything that will destroy the other party's right to receive the benefit of the contract.

87.    Disputes involving the exercise of good faith arise when one party is given broad discretion in performing its obligations under the contract. Where a contract specifically vests one of the parties with broad discretion in performing a term of the contract, the covenant of good faith and fair dealing requires that the discretion be exercised reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties.

88.    Under the Policy, Defendant had discretion to perform its obligations under the contract, including the obligation to determine the ACV of an insured's total-loss vehicle.

89.    Defendant, however exercised its discretion unreasonably, with an improper motive, and in a manner that was arbitrary, capricious, and inconsistent with the reasonable

expectations of the parties, specifically, to arbitrarily reduce the amount of its total-loss payments to insureds, as alleged herein.

90. As such, Defendant breached the covenant of good faith and fair dealing by, *inter alia*:

    a. Intentionally applying "typical negotiation adjustments" to undervalue comparable vehicles, and, in turn, insureds' total-loss vehicles;

    b. Failing to pay insureds the ACV of their total-loss vehicles;

    c. Interpreting the terms and conditions of its insurance policies in an unreasonable manner solely in an effort to understate the value of total-loss vehicles and avoid paying insureds the ACV on their total-loss claims;

    d. Inventing spurious grounds for undervaluing total-loss claims that are hidden, not specific in dollar amount, not adequately explained, and unreasonable.

91. Defendant's breaches of the covenant of good faith and fair dealing have caused damages to Plaintiffs and the Class. Plaintiffs' and the Class members' damages include the amounts improperly deducted by Defendant from their payments to insureds on the basis of a typical negotiation adjustment.

## COUNT 4

## UNJUST ENRICHMENT

92. Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

93. Plaintiffs bring this claim individually and on behalf of the Multistate Class.

94. Plaintiffs plead this claim separately as well as in the alternative to their other claims, as without such claims they would have no adequate legal remedy.

95.     Defendant requested and received a monetary benefit at the expense of Plaintiffs and Class members in the form of premium payments for automobile insurance coverage.

96.     If Defendant had not misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its promise to pay ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation adjustment" to comparable vehicles to artificially reduce its total-loss payments to insureds, Plaintiffs and the Class members either would not have purchased insurance through Defendant, or they would have paid less for such insurance coverage.

97.     Accordingly, Defendant was unjustly enriched by the premiums paid by Plaintiffs and the Class members to the detriment of Plaintiffs and the Class members.

98.     Plaintiffs and the Class members are, thus, entitled to restitution and disgorgement in the amount Defendant was unjustly enriched, in an amount to be determined at trial.

## COUNT 5

## DECLARATORY JUDGMENT

99.     Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

100.     Plaintiffs bring this claim individually and on behalf of the Multistate Class (for purposes of this Count, the "Class").

101.     A dispute between Plaintiffs and the Class and Defendant is before this Court concerning the construction of the auto insurance policies issued by Defendant, and the rights of Plaintiffs and the Class arising under that policy.

102.     Plaintiffs, individually and on behalf of the Class, seek a declaration of rights and liabilities of the parties herein. Specifically, Plaintiffs seek a declaration that in paying total-loss

claims by first-party insureds, it is a breach of Defendant's insurance contract, as well as a violation of law, for Defendant to base the valuation and payment of claims on values of comparable vehicles that have been reduced by arbitrary "typical negotiation adjustments" that are (a) arbitrary, (b) contrary to industry practices and consumer experiences (and therefore not reflective of the vehicle's fair market value), and (c) not as reasonably specific or appropriate as to dollar amount.

103.     Defendant's unlawful common policy and general business practice as described herein are ongoing. Accordingly, Defendant has breached, and continues to breach, the express terms of its contracts of insurance with Plaintiffs and members of the Class.

104.     As a result of these breaches of contract, Plaintiffs and the Class members have been injured.

## II.     CAUSES OF ACTION ASSERTED ON BEHALF OF THE STATE SUBCLASSES

### A.     Alabama

### COUNT 6

### BREACH OF CONTRACT

105.     Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

106.     This claim is brought by Bernadette Williams (for purposes of this Count, "Plaintiff") individually and on behalf of the Alabama Subclass (for purposes of this Count, the "Class").

107.     Plaintiff and each of the other Class members were insured under a policy issued by Defendant, as described herein.

108.     Plaintiff and each of the other Class members made claims under their insurance contracts, which Defendant determined to be first-party total losses under the insurance contract, and additionally determined to be covered claims.

109.     Pursuant to the above-described contractual provisions, upon the total loss of their insured vehicles, Defendant purported to pay Plaintiff and each of the other Class members the ACV of their totaled vehicles.

110.     Defendant, however, failed to pay the ACV of Plaintiff's and Class members' vehicles because Defendant applied an arbitrary and capricious "typical negotiation adjustment'"" to comparable vehicles in order to reduce their market value and, as a result, Defendant's total-loss payments to insureds.

111.     Defendant also failed to comply with Alabama law, which requires that fair retail value of a total loss vehicle be obtained from "a current edition, including automated data base, of a nationally recognized compilation of retail values, such as, but not limited to the National Automobile Dealers Association's Used Car Guide, Southeastern Edition (NADA Retail Price Manual) and Red Book, provided the publication or automated data base presents a fair and representative retail value of the vehicle within the state of Alabama[,]" and which provides that "[d]ownward condition adjustments shall be permitted only if the vehicle has specific conditions other than ordinary wear and tear which materially affect its fai[r] market value or useful life[,] such condition adjustment shall be discernable, measurable, itemized, and specified as to dollar amount and shall be fully documented in the claim file and based upon verifiable supporting data." Ala. Dept. Rev. Adm. Code Ch. 810-5-41-.05(2); see also Ala. Admin. Code. R. 482-1-125-.08(1)(b).

112. Thus, Defendant failed to pay Plaintiff and each of the other Class members the promised ACV of their total-loss vehicles and thereby breached its contract with Plaintiff and each of the other Class members.

113. As a result of such contractual breaches, Plaintiff and each of the other Class members have been damaged and are entitled to recover damages, as well as costs, pre-judgment and post-judgment interest, injunctive relief, and other relief as appropriate.

## COUNT 7

## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

114. Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

115. This claim is brought by Bernadette Williams (for purposes of this Count, "Plaintiff") individually and on behalf of the Alabama Subclass (for purposes of this Count, the "Class").

116. Every contract, including the Policy, contains an implied covenant of good faith and fair dealing. The purpose of this duty is to ensure that parties do not take advantage of each other in a way that could not have been contemplated at the time the contract was drafted or do anything that will destroy the other party's right to receive the benefit of the contract.

117. Disputes involving the exercise of good faith arise when one party is given broad discretion in performing its obligations under the contract. Where a contract specifically vests one of the parties with broad discretion in performing a term of the contract, the covenant of good faith and fair dealing requires that the discretion be exercised reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties.

118.    Under the Policy, Defendant had discretion to perform its obligations under the contract, including the obligation to determine the ACV of an insured's total-loss vehicle. Defendant, however exercised its discretion unreasonably, with an improper motive, and in a manner that was arbitrary, capricious, and inconsistent with the reasonable expectations of the parties, specifically, to arbitrarily reduce the amount of its total-loss payments to insureds, as alleged herein.

119.    Defendant also failed to comply with Alabama law, which requires that fair retail value of a total loss vehicle be obtained from "a current edition, including automated data base, of a nationally recognized compilation of retail values, such as, but not limited to the National Automobile Dealers Association's Used Car Guide, Southeastern Edition (NADA Retail Price Manual) and Red Book, provided the publication or automated data base presents a fair and representative retail value of the vehicle within the state of Alabama[,]" and which provides that "[d]ownward condition adjustments shall be permitted only if the vehicle has specific conditions other than ordinary wear and tear which materially affect its fai[r] market value or useful life[,] such condition adjustment shall be discernable, measurable, itemized, and specified as to dollar amount and shall be fully documented in the claim file and based upon verifiable supporting data." Ala. Dept. Rev. Adm. Code Ch. 810-5-41-.05(2); see also Ala. Admin. Code. R. 482-1-125-.08(1)(b).

120.    As such, Defendant breached the covenant of good faith and fair dealing by, *inter alia*:

    a.    Intentionally applying "typical negotiation adjustments" to undervalue comparable vehicles, and, in turn, insureds' total-loss vehicles;

    b.    Failing to pay insureds the ACV of their total-loss vehicles;

    c.   Interpreting the terms and conditions of their insurance policies in an unreasonable manner solely in an effort to understate the value of total-loss vehicles and avoid paying insureds the ACV on their total-loss claims;

    d.   Inventing spurious grounds for undervaluing total-loss claims that are hidden, not specific in dollar amount, not adequately explained, and unreasonable.

121.    Defendant's breaches of the covenant of good faith and fair dealing have caused damages to Plaintiff and the Class. Plaintiff's and the Class members' damages include the amounts improperly deducted by Defendant from its payments to insureds on the basis of a typical negotiation adjustment.

## COUNT 8

## UNJUST ENRICHMENT

122.    Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

123.    This claim is brought by Bernadette Williams (for purposes of this Count, "Plaintiff") individually and on behalf of the Alabama Subclass (for purposes of this Count, the "Class").

124.    Plaintiff pleads this claim separately as well as in the alternative to her other claims, as without such claims she would have no adequate legal remedy.

125.    Defendant requested and received a monetary benefit at the expense of Plaintiff and Class members in the form of premium payments for automobile insurance coverage.

126.    Defendant misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its promise to pay ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation adjustment" to comparable vehicles to artificially reduce its total-loss payments to insureds.

127.    Defendant also failed to comply with Alabama law, which requires that fair retail value of a total loss vehicle be obtained from "a current edition, including automated data base, of a nationally recognized compilation of retail values, such as, but not limited to the National Automobile Dealers Association's Used Car Guide, Southeastern Edition (NADA Retail Price Manual) and Red Book, provided the publication or automated data base presents a fair and representative retail value of the vehicle within the state of Alabama[,]" and which provides that "[d]ownward condition adjustments shall be permitted only if the vehicle has specific conditions other than ordinary wear and tear which materially affect its fai[r] market value or useful life[,] such condition adjustment shall be discernable, measurable, itemized, and specified as to dollar amount and shall be fully documented in the claim file and based upon verifiable supporting data." Ala. Dept. Rev. Adm. Code Ch. 810-5-41-.05(2); see also Ala. Admin. Code. R. 482-1-125-.08(1)(b).

128.    If Defendant had not misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its promise to pay ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation adjustment" to comparable vehicles to artificially reduce its total-loss payments to insureds and its failure to comply with Alabama law, Plaintiff and the Class members either would not have purchased insurance through Defendant, or they would have paid less for such insurance coverage.

129.    Accordingly, Defendant was unjustly enriched by the premiums paid by Plaintiff and the Class members to the detriment of Plaintiff and the Class members.

130.    Plaintiff and the Class members are, thus, entitled to restitution and disgorgement in the amount Defendant was unjustly enriched, in an amount to be determined at trial.

## COUNT 9

## DECLARATORY JUDGMENT

131.    Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

132.    This claim is brought by Bernadette Williams (for purposes of this Count, "Plaintiff") individually and on behalf of the Alabama Subclass (for purposes of this Count, the "Class").

133.    A dispute between Plaintiff and the Class and Defendant is before this Court concerning the construction of the auto insurance policies issued by Defendant, and the rights of Plaintiff and the Class arising under that policy.

134.    Plaintiff, individually and on behalf of the Class, seek a declaration of rights and liabilities of the parties herein. Specifically, Plaintiff seeks a declaration that in paying total-loss claims by first-party insureds, it is a breach of Defendant's insurance contract, as well as a violation of law, for Defendant to base the valuation and payment of claims on values of comparable vehicles that have been reduced by arbitrary "typical negotiation adjustments" that are (a) arbitrary, (b) contrary to industry practices and consumer experiences (and therefore not reflective of the vehicle's fair market value), and (c) not as reasonably specific or appropriate as to dollar amount.

135.    Defendant's unlawful common policy and general business practice as described herein are ongoing. Accordingly, Defendant has breached, and continues to breach, the express terms of its contracts of insurance with Plaintiff and members of the Class.

136.    As a result of these breaches of contract and violations of law, Plaintiff and the Class members have been injured.

**B.** **Arizona**

## COUNT 10

## BREACH OF CONTRACT

137.    Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

138.    This Count is brought by Plaintiff Akeiwa Doyle (for purposes of this Count, "Plaintiff") individually and on behalf of the Arizona Subclass (for purposes of this Count, the "Class").

139.    Plaintiff and each of the other Class members were insured under a policy issued by Defendant, as described herein.

140.    Plaintiff and each of the other Class members made claims under their insurance contracts, which Defendant determined to be first-party total losses under the insurance contract, and additionally determined to be covered claims.

141.    Pursuant to the above-described contractual provisions, upon the total loss of their insured vehicles, Defendant purported to pay Plaintiff and each of the other Class members the ACV of their totaled vehicles.

142.    Defendant, however, failed to pay the ACV of Plaintiff's and Class members' vehicles because Defendant applied an arbitrary and capricious "typical negotiation adjustment" to comparable vehicles in order to reduce their market value and, as a result, Defendant's total-loss payments to insureds.

143.    Defendant also failed to comply with Arizona law, which requires insurers who settle a total loss claim with a cash settlement on the basis of actual cash value to determine the "actual cost… to purchase a comparable automobile" of a totaled vehicle, determined by "i. The cost of a comparable automobile in the local market area when a comparable automobile is

available in the local market area" or "ii. One of two or more quotations obtained by the insurer from two or more qualified dealers located within the local market area when a comparable automobile is not available in the local market area." Ariz. Admin. Code Section R20-6-801(H)(1)(b). When the basis for the total loss settlement deviates from either of these methods, "the deviation must be supported by documentation giving particulars of the automobile condition. Any deductions from such cost, including deduction for salvage, must be measurable, discernible, itemized and specified as to dollar amount and shall be appropriate in amount. The basis for such settlement shall be fully explained to the first party claimant." Ariz. Admin. Code Section R20-6-801(H)(1)(c).

144.    Thus, Defendant failed to pay Plaintiff and each of the other Class members the promised ACV of their total-loss vehicles and thereby breached its contract with Plaintiff and each of the other Class members.

145.    As a result of such contractual breaches, Plaintiff and each of the other Class members have been damaged and are entitled to recover damages, as well as costs, pre-judgment and post-judgment interest, injunctive relief, and other relief as appropriate.

## COUNT 11

### BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

146.    Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

147.    This Count is brought by Plaintiff Akeiwa Doyle (for purposes of this Count, "Plaintiff") individually and on behalf of the Arizona Subclass (for purposes of this Count, the "Class").

148.    Every contract, including the Policy, contains an implied covenant of good faith and fair dealing. The purpose of this duty is to ensure that parties do not take advantage of each other in a way that could not have been contemplated at the time the contract was drafted or do anything that will destroy the other party's right to receive the benefit of the contract.

149.    Disputes involving the exercise of good faith arise when one party is given broad discretion in performing its obligations under the contract. Where a contract specifically vests one of the parties with broad discretion in performing a term of the contract, the covenant of good faith and fair dealing requires that the discretion be exercised reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties.

150.    Under the Policy, Defendant had discretion to perform its obligations under the contract, including the obligation to determine the ACV of an insured's total-loss vehicle. Defendant, however exercised its discretion unreasonably, with an improper motive, and in a manner that was arbitrary, capricious, and inconsistent with the reasonable expectations of the parties, specifically, to arbitrarily reduce the amount of its total-loss payments to insureds, as alleged herein.

151.    Defendant also failed to comply with Arizona law, which requires insurers who settle a total loss claim with a cash settlement on the basis of actual cash value to determine the "actual cost… to purchase a comparable automobile" of a totaled vehicle, determined by "i. The cost of a comparable automobile in the local market area when a comparable automobile is available in the local market area" or "ii. One of two or more quotations obtained by the insurer from two or more qualified dealers located within the local market area when a comparable automobile is not available in the local market area." Ariz. Admin. Code Section R20-6-801(H)(1)(b). When the basis for the total loss settlement deviates from either of these methods,

"the deviation must be supported by documentation giving particulars of the automobile condition. Any deductions from such cost, including deduction for salvage, must be measurable, discernible, itemized and specified as to dollar amount and shall be appropriate in amount. The basis for such settlement shall be fully explained to the first party claimant." Ariz. Admin. Code Section R20-6-801(H)(1)(c).

152.    As such, Defendant breached the covenant of good faith and fair dealing by, *inter alia*:

    a.  Intentionally applying "typical negotiation adjustments" to undervalue comparable vehicles, and, in turn, insureds' total-loss vehicles;

    b.  Failing to pay insureds the ACV of their total-loss vehicles;

    c.  Interpreting the terms and conditions of its insurance policies in an unreasonable manner solely in an effort to understate the value of total-loss vehicles and avoid paying insureds the ACV on their total-loss claims;

    d.  Inventing spurious grounds for undervaluing total-loss claims that are hidden, not specific in dollar amount, not adequately explained, and unreasonable.

153.    Defendant's breaches of the covenant of good faith and fair dealing have caused damages to Plaintiff and the Class. Plaintiff's and the Class members' damages include the amounts improperly deducted by Defendant from its payments to insureds on the basis of a typical negotiation adjustment.

## COUNT 12

## UNJUST ENRICHMENT

154.    Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

155.    This Count is brought by Plaintiff Akeiwa Doyle (for purposes of this Count, "Plaintiff") individually and on behalf of the Arizona Subclass (for purposes of this Count, the "Class").

156.    Plaintiff pleads this claim separately as well as in the alternative to their other claims, as without such claims they would have no adequate legal remedy.

157.    Defendant requested and received a monetary benefit at the expense of Plaintiff and Class members in the form of premium payments for automobile insurance coverage.

158.    Defendant misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its promise to pay ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation adjustment" to comparable vehicles to artificially reduce its total-loss payments to insureds.

159.    Defendant also failed to comply with Arizona law, which requires insurers who settle a total loss claim with a cash settlement on the basis of actual cash value to determine the "actual cost… to purchase a comparable automobile" of a totaled vehicle, determined by "i. The cost of a comparable automobile in the local market area when a comparable automobile is available in the local market area" or "ii. One of two or more quotations obtained by the insurer from two or more qualified dealers located within the local market area when a comparable automobile is not available in the local market area." Ariz. Admin. Code Section R20-6-801(H)(1)(b). When the basis for the total loss settlement deviates from either of these methods, "the deviation must be supported by documentation giving particulars of the automobile condition. Any deductions from such cost, including deduction for salvage, must be measurable, discernible, itemized and specified as to dollar amount and shall be appropriate in amount. The basis for such

settlement shall be fully explained to the first party claimant." Ariz. Admin. Code Section R20-6-801(H)(1)(c).

160.    If Defendant had not misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its promise to pay ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation adjustment" to comparable vehicles to artificially reduce its total-loss payments to insureds and its failure to comply with Arizona law, Plaintiff and the Class members either would not have purchased insurance through Defendant, or they would have paid less for such insurance coverage.

161.    Accordingly, Defendant was unjustly enriched by the premiums paid by Plaintiff and the Class members to the detriment of Plaintiff and the Class members.

162.    Plaintiff and the Class members are, thus, entitled to restitution and disgorgement in the amount Defendant was unjustly enriched, in an amount to be determined at trial.

## COUNT 13

## DECLARATORY JUDGMENT

163.    Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

164.    This Count is brought by Plaintiff Akeiwa Doyle (for purposes of this Count, "Plaintiff") individually and on behalf of the Arizona Subclass (for purposes of this Count, the "Class").

165.    A dispute between Plaintiff and the Class and Defendant is before this Court concerning the construction of the auto insurance policies issued by Defendant, and the rights of Plaintiff and the Class arising under that policy.

166. Plaintiff, individually and on behalf of the Class, seek a declaration of rights and liabilities of the parties herein. Specifically, Plaintiff seeks a declaration that in paying total-loss claims by first-party insureds, it is a breach of Defendant's insurance contract, as well as a violation of law, for Defendant to base the valuation and payment of claims on values of comparable vehicles that have been reduced by arbitrary "typical negotiation adjustments" that are (a) arbitrary, (b) contrary to industry practices and consumer experiences (and therefore not reflective of the vehicle's fair market value), and (c) not as reasonably specific or appropriate as to dollar amount.

167. Defendant's unlawful common policy and general business practice as described herein are ongoing. Accordingly, Defendant has breached, and continues to breach, the express terms of their contracts of insurance with Plaintiff and members of the Class.

168. As a result of these breaches of contract, Plaintiff and the Class members have been injured.

**C.     Arkansas**

**COUNT 14**

**VIOLATION OF THE ARKANSAS DECEPTIVE TRADE PRACTICES ACT**
**Ark. Code § 4-88-101, *et seq.***

169. Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

170. This claim is brought by Rick McConnell (for purposes of this Count, "Plaintiff") individually and on behalf of the Arkansas Subclass (for purposes of this Count, the "Class").

171. Defendant, Plaintiff, and the Class members are "persons" within the meaning of A.C.A. § 4-88-102(5).

172. Defendant provides "services" within the meaning of A.C.A. § 4-88-102(7).

173.     Defendant advertised, offered, or sold services in Arkansas and engaged in trade or commerce directly or indirectly affecting the people of Arkansas.

174.     The Arkansas Deceptive Trade Practices Act ("ADTPA"), A.C.A. §§ 4-88-101, *et seq*., prohibits unfair, deceptive, false, and unconscionable trade practices.

175.     As alleged herein, Defendant engaged in the concealment, suppression and omission of material facts, with intent that others rely upon the concealment, suppression or omission in violation of A.C.A. § 4-88-108(2), and engaged in unconscionable, false, or deceptive act or practice in business, commerce, or trade, in violation of A.C.A. § 4-88-107.

176.     As alleged herein, Defendant, through its agents, employees, and/or subsidiaries, violated the ADTPA by knowingly and intentionally concealing and failing to disclose material facts regarding their application of an arbitrary "typical negotiation adjustment" to comparable vehicles in order to reduce their market value and, as a result, the amount of Defendant's total-loss payments to insureds, as detailed above.

177.     Defendant also fail to comply with Arkansas law, which requires an insurer to determine the "actual cost" of a total loss vehicle by determining "(A) The cost of a comparable automobile in the local market area when a comparable automobile is available in the local market area; or (B) Use of one (1) of two (2) or more quotations obtained by the insurer from two (2) or more qualified dealers or appraisal services located within the local market area when a comparable automobile is not available in the local market area[,]" and provides that "[w]hen a first party automobile total loss is settled on a basis which deviates from the methods described in subsections (a)(1) and (2) of this section, the deviation must be supported by documentation giving particulars of the automobile's condition. Any deductions from such cost, including deduction for salvage, must be measurable, discernible, itemized and specified as to dollar amount and shall be

appropriate in amount. The basis for such settlement shall be fully explained to the first party claimant." Ark. Rules and Regs. 43 § 10.

178.    By knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding its application of an arbitrary "typical negotiation adjustment" to comparable vehicles, and its failure to comply with Arkansas law, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the ADTPA.

179.    Defendant's misrepresentations and omissions regarding its application of an arbitrary "typical negotiation adjustment" to comparable vehicles were made to Plaintiff and the Class members in a uniform manner.

180.    Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppression of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about Defendant's application of an arbitrary "typical negotiation" to comparable vehicles in order to reduce the amount of Defendant's total-loss payments to their insureds.

181.    The facts regarding Defendant's application of an arbitrary "typical negotiation adjustment" to comparable vehicles that Defendant knowingly and intentionally misrepresented, omitted, concealed, and/or failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Defendant's insurance coverage.

182.    Plaintiff and Class members had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant had

concealed or failed to disclose. Plaintiff and Class members did not, and could not, unravel Defendant's deception on their own.

183.     Defendant had an ongoing duty to Plaintiff and the Class members to refrain from engaging in unfair or deceptive practices under the ADTPA in the course of its business. Specifically, Defendant owed Plaintiff and Class members a duty to disclose all the material facts concerning its application of an arbitrary "typical negotiation adjustment" to comparable vehicles because Defendant possessed exclusive knowledge of those facts, it intentionally concealed those facts from Plaintiff and the Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

184.     Plaintiff and the Class members were aggrieved by Defendant's violations of the ADTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts regarding their application of an arbitrary "typical negotiation adjustment" to comparable vehicles, including that the "typical negotiation adjustment" is arbitrarily selected and applied, in an inconsistent manner designed to decrease Defendant's total-loss payments under the Policy.

185.     Plaintiff and the Class members purchased Defendant's insurance coverage in reliance on Defendant's misrepresentations, omissions, concealments, and/or failures to disclose material facts regarding its promise to pay ACV in the event of a total loss and Defendant's application of an arbitrary "typical negotiation adjustment" to comparable vehicles to artificially reduce its total-loss payment to insureds.

186.     Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and Class members would not have purchased insurance coverage from Defendant, or

would not have paid as much for it and, thus, they did not receive the benefit of the bargain and/or they suffered out-of-pocket loss.

187.    Defendant's violations of the ADTPA present a continuing risk of future harm to Plaintiff and the Class members.

188.    Plaintiff and the Class members seek an order enjoining Defendant's unfair and deceptive acts or practices in violation of the ADTPA and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the ADTPA.

**COUNT 15**

**BREACH OF CONTRACT**

189.    Plaintiff repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

190.    This claim is brought by Rick McConnell (for purposes of this Count, "Plaintiff") individually and on behalf of the Arkansas Subclass (for purposes of this Count, the "Class").

191.    Plaintiff and each of the other Class members were insured under a policy issued by Defendant, as described herein.

192.    Plaintiff and each of the other Class members made claims under their insurance contracts, which Defendant determined to be first-party total losses under the insurance contract, and additionally determined to be covered claims.

193.    Pursuant to the above-described contractual provisions, upon the total loss of their insured vehicles, Defendant purported to pay Plaintiff and each of the other Class members the ACV of their totaled vehicles.

194.    Defendant, however, failed to pay the ACV of Plaintiff's and Class members' vehicles because Defendant applied an arbitrary and capricious "typical negotiation adjustment"

to comparable vehicles in order to reduce their market value and, as a result, Defendant's total-loss payments to insureds.

195.    Defendant also failed to comply with Arkansas law, which requires an insurer to determine the "actual cost" of a total loss vehicle by determining "(A) The cost of a comparable automobile in the local market area when a comparable automobile is available in the local market area; or (B) Use of one (1) of two (2) or more quotations obtained by the insurer from two (2) or more qualified dealers or appraisal services located within the local market area when a comparable automobile is not available in the local market area[,]" and provides that "[w]hen a first party automobile total loss is settled on a basis which deviates from the methods described in subsections (a)(1) and (2) of this section, the deviation must be supported by documentation giving particulars of the automobile's condition. Any deductions from such cost, including deduction for salvage, must be measurable, discernible, itemized and specified as to dollar amount and shall be appropriate in amount. The basis for such settlement shall be fully explained to the first party claimant." Ark. Rules and Regs. 43 § 10.

196.    Thus, Defendant failed to pay Plaintiff and each of the other Class members the promised ACV of their total-loss vehicles and thereby breached its contract with Plaintiff and each of the other Class members.

197.    As a result of such contractual breaches, Plaintiff and each of the other Class members have been damaged and are entitled to recover damages, as well as costs, pre-judgment and post-judgment interest, injunctive relief, and other relief as appropriate.

## COUNT 16

## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

198.    Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

199.    This claim is brought by Rick McConnell (for purposes of this Count, "Plaintiff") individually and on behalf of the Arkansas Subclass (for purposes of this Count, the "Class").

200.    Every contract, including the Policy, contains an implied covenant of good faith and fair dealing. The purpose of this duty is to ensure that parties do not take advantage of each other in a way that could not have been contemplated at the time the contract was drafted or do anything that will destroy the other party's right to receive the benefit of the contract.

201.    Disputes involving the exercise of good faith arise when one party is given broad discretion in performing its obligations under the contract. Where a contract specifically vests one of the parties with broad discretion in performing a term of the contract, the covenant of good faith and fair dealing requires that the discretion be exercised reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties.

202.    Under the Policy, Defendant had discretion to perform its obligations under the contract, including the obligation to determine the ACV of an insured's total-loss vehicle. Defendant, however exercised its discretion unreasonably, with an improper motive, and in a manner that was arbitrary, capricious, and inconsistent with the reasonable expectations of the parties, specifically, to arbitrarily reduce the amount of its total-loss payments to insureds, as alleged herein.

203.    Defendant also failed to comply with Arkansas law, which requires an insurer to determine the "actual cost" of a total loss vehicle by determining "(A) The cost of a comparable automobile in the local market area when a comparable automobile is available in the local market area; or (B) Use of one (1) of two (2) or more quotations obtained by the insurer from two (2) or

more qualified dealers or appraisal services located within the local market area when a comparable automobile is not available in the local market area[,]" and provides that "[w]hen a first party automobile total loss is settled on a basis which deviates from the methods described in subsections (a)(1) and (2) of this section, the deviation must be supported by documentation giving particulars of the automobile's condition. Any deductions from such cost, including deduction for salvage, must be measurable, discernible, itemized and specified as to dollar amount and shall be appropriate in amount. The basis for such settlement shall be fully explained to the first party claimant." Ark. Rules and Regs. 43 § 10.

204. As such, Defendant breached the covenant of good faith and fair dealing by, *inter alia*:

    a. Intentionally applying "typical negotiation adjustments" to undervalue comparable vehicles, and, in turn, insureds' total-loss vehicles;

    b. Failing to pay insureds the ACV of their total-loss vehicles;

    c. Interpreting the terms and conditions of their insurance policies in an unreasonable manner solely in an effort to understate the value of total-loss vehicles and avoid paying insureds the ACV on their total-loss claims;

    d. Inventing spurious grounds for undervaluing total loss claims that are hidden, not specific in dollar amount, not adequately explained, and unreasonable.

205. Defendant's breaches of the covenant of good faith and fair dealing have caused damages to Plaintiff and the Class. Plaintiff's and the Class members' damages include the amounts improperly deducted by Defendant from its payments to insureds on the basis of a typical negotiation adjustment.

**COUNT 17**

**UNJUST ENRICHMENT**

206. Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

207. This claim is brought by Rick McConnell (for purposes of this Count, "Plaintiff") individually and on behalf of the Arkansas Subclass (for purposes of this Count, the "Class").

208. Plaintiff pleads this claim separately as well as in the alternative to his other claims, as without such claims she would have no adequate legal remedy.

209. Defendant requested and received a monetary benefit at the expense of Plaintiff and Class members in the form of premium payments for automobile insurance coverage.

210. Defendant misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its promise to pay ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation adjustment" to comparable vehicles to artificially reduce its total-loss payments to insureds.

211. Defendant also failed to comply with Arkansas law, which requires an insurer to determine the "actual cost" of a total loss vehicle by determining "(A) The cost of a comparable automobile in the local market area when a comparable automobile is available in the local market area; or (B) Use of one (1) of two (2) or more quotations obtained by the insurer from two (2) or more qualified dealers or appraisal services located within the local market area when a comparable automobile is not available in the local market area[,]" and provides that "[w]hen a first party automobile total loss is settled on a basis which deviates from the methods described in subsections (a)(1) and (2) of this section, the deviation must be supported by documentation giving particulars of the automobile's condition. Any deductions from such cost, including deduction for salvage, must be measurable, discernible, itemized and specified as to dollar amount and shall be

appropriate in amount. The basis for such settlement shall be fully explained to the first party claimant." Ark. Rules and Regs. 43 § 10.

212.    If Defendant had not misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its promise to pay ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation adjustment" to comparable vehicles to artificially reduce its total-loss payments to insureds and its failure to comply with Arkansas law, Plaintiff and the Class members either would not have purchased insurance through Defendant, or they would have paid less for such insurance coverage.

213.    Accordingly, Defendant was unjustly enriched by the premiums paid by Plaintiff and the Class members to the detriment of Plaintiff and the Class members.

214.    Plaintiff and the Class members are, thus, entitled to restitution and disgorgement in the amount Defendant was unjustly enriched, in an amount to be determined at trial.

## COUNT 18

## DECLARATORY JUDGMENT

215.    Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

216.    This claim is brought by Rick McConnell (for purposes of this Count, "Plaintiff") individually and on behalf of the Arkansas Subclass (for purposes of this Count, the "Class").

217.    A dispute between Plaintiff and the Class and Defendant is before this Court concerning the construction of the auto insurance policies issued by Defendant, and the rights of Plaintiff and the Class arising under that policy.

218.    Plaintiff, individually and on behalf of the Class, seek a declaration of rights and liabilities of the parties herein. Specifically, Plaintiff seeks a declaration that in paying total-loss

claims by first-party insureds, it is a breach of Defendant's insurance contract, as well as a violation of law, for Defendant to base the valuation and payment of claims on values of comparable vehicles that have been reduced by arbitrary "typical negotiation adjustments" that are (a) arbitrary, (b) contrary to industry practices and consumer experiences (and therefore not reflective of the vehicle's fair market value), and (c) not as reasonably specific or appropriate as to dollar amount.

219.    Defendant's unlawful common policy and general business practice as described herein are ongoing. Accordingly, Defendant has breached, and continues to breach, the express terms of its contracts of insurance with Plaintiff and members of the Class.

220.    As a result of these breaches of contract, Plaintiff and the Class members have been injured.

D.    **Delaware**

## COUNT 19

### VIOLATION OF THE DELAWARE CONSUMER FRAUD ACT
### 6 Del. Code §§ 2513, *et seq.*

221.    Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

222.    This claim is brought by Plaintiff Rosilyn Wilson (for purposes of this Count, "Plaintiff") individually and on behalf of the Delaware Subclass (for purposes of this Count, the "Class").

223.    Defendant is a "person" as engaged in the sale of "merchandise" as defined by 6 Del. Code § 2511(6), (7).

224.    The Delaware Consumer Fraud Act ("Delaware CFA"), 6 Del. Code §§ 2513, *et seq.*, prohibits the act, use, or employment by any person of any deception, fraud, false pretense,

false promise, misrepresentation, unfair practice, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale, lease, receipt, or advertisement of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby, is an unlawful practice.

225.    As alleged herein, Defendant, through its agents, employees, and/or subsidiaries, violated the Delaware CFA by knowingly and intentionally concealing and failing to disclose material facts regarding its application of an arbitrary "typical negotiation adjustment" to comparable vehicles in order to reduce their market value and, as a result, the amount of Defendant's total-loss payments to insureds, as detailed above.

226.    Defendant also failed to comply with  Delaware law, which, when insurance companies are determining "fair market value" of insured's vehicles, requires that "adjustment[s] shall be based on the fair market value at the time of loss of a like make, model, condition and equipped automobile[,] and provides that "the adjuster shall be prepared to substantiate his offer with the average quotation from three reputable used car dealer managers in the area of claimant's residence" and that "[t]he only exception would be where the vehicle that is the subject of the claim so singularly unique so that the adjuster must widen the each for comparable vehicles in order to accurately calculate the value of the totaled vehicle." Del. Dept. Ins. Auto Bulletin No. 1, Reissued January 25, 2018.

227.    By knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding its application of an arbitrary "typical negotiation adjustment" to comparable vehicles, and Defendant's failure to comply with Delaware law, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Delaware CFA.

228. Defendant's misrepresentations and omissions regarding its application of an arbitrary "typical negotiation adjustment" to comparable vehicles were made to Plaintiff and the Class members in a uniform manner.

229. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppression of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about Defendant's application of an arbitrary "typical negotiation adjustment" to comparable vehicles in order to reduce the amount of Defendant's total-loss payments to its insureds.

230. The facts regarding Defendant's application of an arbitrary "typical negotiation adjustment" to comparable vehicles that Defendant knowingly and intentionally misrepresented, omitted, concealed, and/or failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Defendant's insurance coverage.

231. Plaintiff and Class members had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant had concealed or failed to disclose. Plaintiff and Class members did not, and could not, unravel Defendant's deception on their own.

232. Defendant had an ongoing duty to Plaintiff and the Class members to refrain from engaging in unfair or deceptive practices under the Delaware CFA in the course of its business. Specifically, Defendant owed Plaintiff and Class members a duty to disclose all the material facts concerning its application of an arbitrary "typical negotiation adjustment" to comparable vehicles because Defendant possessed exclusive knowledge of those facts, it intentionally concealed those

facts from Plaintiff and the Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

233.     Plaintiff and the Class members were aggrieved by Defendant's violations of the Delaware CFA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts regarding its application of an arbitrary "typical negotiation adjustment" to comparable vehicles, including that the "typical negotiation adjustment" is arbitrarily selected and applied in an inconsistent manner designed to decrease Defendant's total-loss payments under the Policy.

234.     Plaintiff and the Class members purchased Defendant's insurance coverage in reliance on Defendant's misrepresentations, omissions, concealments, and/or failures to disclose material facts regarding its promise to pay ACV in the event of a total loss and Defendant's application of an arbitrary "typical negotiation adjustment" to comparable vehicles to artificially reduce its total-loss payments to insureds.

235.     Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and Class members would not have purchased insurance coverage from Defendant or would not have paid as much for it and, thus, they did not receive the benefit of the bargain and/or they suffered out-of-pocket loss.

236.     Defendant's violations of the Delaware CFA present a continuing risk of future harm to Plaintiff and the Class members.

237.     Plaintiff and the Class members seek an order enjoining Defendant's unfair and deceptive acts or practices in violation of the Delaware CFA and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Delaware CFA.

## COUNT 20

## BREACH OF CONTRACT

238.     Plaintiff repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

239.     This claim is brought by Plaintiff Rosilyn Wilson (for purposes of this Count, "Plaintiff") individually and on behalf of the Delaware Subclass (for purposes of this Count, the "Class").

240.     Plaintiff and each of the other Class members were insured under a policy issued by Defendant, as described herein.

241.     Plaintiff and each of the other Class members made claims under their insurance contracts, which Defendant determined to be first-party total losses under the insurance contract, and additionally determined to be covered claims.

242.     Pursuant to the above-described contractual provisions, upon the total loss of their insured vehicles, Defendant purported to pay Plaintiff and each of the other Class members the ACV of their totaled vehicles.

243.     Defendant, however, failed to pay the ACV of Plaintiff's and Class members' vehicles because Defendant applied an arbitrary and capricious "typical negotiation adjustment" to comparable vehicles in order to reduce their market value and, as a result, Defendant's total-loss payments to insureds.

244.     Defendant also failed to comply with Delaware law, which requires that "adjustment[s] shall be based on the fair market value at the time of loss of a like make, model, condition and equipped automobile[,] and provides that "the adjuster shall be prepared to substantiate his offer with the average quotation from three reputable used car dealer managers in

the area of claimant's residence" and that "[t]he only exception would be where the vehicle that is the subject of the claim so singularly unique so that the adjuster must widen the each for comparable vehicles in order to accurately calculate the value of the totaled vehicle." Del. Dept. Ins. Auto Bulletin No. 1, Reissued January 25, 2018.

245. Thus, Defendant failed to pay Plaintiff and each of the other Class members the promised ACV of their total-loss vehicles and thereby breached its contract with Plaintiff and each of the other Class members.

246. As a result of such contractual breaches, Plaintiff and each of the other Class members have been damaged and are entitled to recover damages, as well as costs, pre-judgment and post-judgment interest, injunctive relief, and other relief as appropriate.

## COUNT 21

## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

247. Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

248. This claim is brought by Plaintiff Rosilyn Wilson (for purposes of this Count, "Plaintiff") individually and on behalf of the Delaware Subclass (for purposes of this Count, the "Class").

249. Every contract, including the Policy, contains an implied covenant of good faith and fair dealing. The purpose of this duty is to ensure that parties do not take advantage of each other in a way that could not have been contemplated at the time the contract was drafted or do anything that will destroy the other party's right to receive the benefit of the contract.

250. Disputes involving the exercise of good faith arise when one party is given broad discretion in performing its obligations under the contract. Where a contract specifically vests one

of the parties with broad discretion in performing a term of the contract, the covenant of good faith and fair dealing requires that the discretion be exercised reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties.

251.     Under the Policy, Defendant had discretion to perform its obligations under the contract, including the obligation to determine the ACV of an insured's total-loss vehicle. Defendant, however exercised its discretion unreasonably, with an improper motive, and in a manner that was arbitrary, capricious, and inconsistent with the reasonable expectations of the parties, specifically, to arbitrarily reduce the amount of their total-loss payments to insureds, as alleged herein.

252.     Defendant also failed to comply with Delaware law, which requires that "adjustment[s] shall be based on the fair market value at the time of loss of a like make, model, condition and equipped automobile[,] and provides that "the adjuster shall be prepared to substantiate his offer with the average quotation from three reputable used car dealer managers in the area of claimant's residence" and that "[t]he only exception would be where the vehicle that is the subject of the claim so singularly unique so that the adjuster must widen the each for comparable vehicles in order to accurately calculate the value of the totaled vehicle." Del. Dept. Ins. Auto Bulletin No. 1, Reissued January 25, 2018.

253.     As such, Defendant breached the covenant of good faith and fair dealing by, *inter alia*:

   a.   Intentionally applying "typical negotiation adjustments" to undervalue comparable vehicles, and, in turn, insureds' total-loss vehicles;

   b.   Failing to pay insureds the ACV of their total-loss vehicles;

   c.   Interpreting the terms and conditions of their insurance policies in an unreasonable manner solely in an effort to understate the value of total-

loss vehicles and avoid paying insureds the ACV on their total-loss claims;

d. Inventing spurious grounds for undervaluing total loss claims that are hidden, not specific in dollar amount, not adequately explained, and unreasonable.

254. Defendant's breaches of the covenant of good faith and fair dealing have caused damages to Plaintiff and the Class. Plaintiff's and the Class members' damages include the amounts improperly deducted by Defendant from its payments to insureds on the basis of a typical negotiation adjustment.

## COUNT 22

## UNJUST ENRICHMENT

255. Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

256. This claim is brought by Plaintiff Rosilyn Wilson (for purposes of this Count, "Plaintiff") individually and on behalf of the Delaware Subclass (for purposes of this Count, the "Class").

257. Plaintiff pleads this claim separately as well as in the alternative to her other claims, as without such claims she would have no adequate legal remedy.

258. Defendant requested and received a monetary benefit at the expense of Plaintiff and Class members in the form of premium payments for automobile insurance coverage.

259. Defendant misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its promise to pay ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation adjustment" to comparable vehicles to artificially reduce its total-loss payments to insureds.

260. Defendant also failed to comply with Delaware law, which requires that "adjustment[s] shall be based on the fair market value at the time of loss of a like make, model, condition and equipped automobile[,] and provides that "the adjuster shall be prepared to substantiate his offer with the average quotation from three reputable used car dealer managers in the area of claimant's residence" and that "[t]he only exception would be where the vehicle that is the subject of the claim so singularly unique so that the adjuster must widen the each for comparable vehicles in order to accurately calculate the value of the totaled vehicle." Del. Dept. Ins. Auto Bulletin No. 1, Reissued January 25, 2018.

261. If Defendant had not misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its promise to pay ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation adjustment" to comparable vehicles to artificially reduce its total-loss payments to insureds and its failure to comply with Delaware law, Plaintiff and the Class members either would not have purchased insurance through Defendant, or they would have paid less for such insurance coverage.

262. Accordingly, Defendant was unjustly enriched by the premiums paid by Plaintiff and the Class members to the detriment of Plaintiff and the Class members.

263. Plaintiff and the Class members are, thus, entitled to restitution and disgorgement in the amount Defendant was unjustly enriched, in an amount to be determined at trial.

**COUNT 23**

**DECLARATORY JUDGMENT**

264. Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

265.    This claim is brought by Plaintiff Rosilyn Wilson (for purposes of this Count, "Plaintiff") individually and on behalf of the Delaware Subclass (for purposes of this Count, the "Class").

266.    A dispute between Plaintiff and the Class and Defendant is before this Court concerning the construction of the auto insurance policies issued by Defendant, and the rights of Plaintiff and the Class arising under that policy.

267.    Plaintiff, individually and on behalf of the Class, seeks a declaration of rights and liabilities of the parties herein. Specifically, Plaintiff seeks a declaration that in paying total-loss claims by first-party insureds, it is a breach of Defendant's insurance contract, as well as a violation of law, for Defendant to base the valuation and payment of claims on values of comparable vehicles that have been reduced by arbitrary "typical negotiation adjustments" that are (a) arbitrary, (b) contrary to industry practices and consumer experiences (and therefore not reflective of the vehicle's fair market value), and (c) not as reasonably specific or appropriate as to dollar amount.

268.    Defendant's unlawful common policy and general business practice as described herein are ongoing. Accordingly, Defendant has breached, and continues to breach, the express terms of its contracts of insurance with Plaintiff and members of the Class.

269.    As a result of these breaches of contract, Plaintiff and the Class members have been injured.

E.    **Florida**

## COUNT 24

## FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT,
### Fla. Stat. §§ 501.201, *et seq.*

270. Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

271. This claim is brought by Plaintiff Linda Lewis (for purposes of this Count, "Plaintiff") individually and on behalf of the Florida Subclass (for purposes of this Count, the "Class").

272. Plaintiff and the Class members are "consumers" within the meaning of Fla. Stat. § 501.203(7).

273. Defendant was and is engaged in "trade or commerce" within the meaning of Fla. Stat. § 501.203(8).

274. The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §§ 501.201, et seq., prohibits unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce.

275. As alleged herein, Defendant, through its agents, employees, and/or subsidiaries, violated the FDUTPA by knowingly and intentionally concealing and failing to disclose material facts regarding its application of an arbitrary "typical negotiation adjustment" to comparable vehicles in order to reduce their market value and, as a result, the amount of Defendant's total-loss payments to insureds, as detailed above.

276. Defendant also failed to comply with Florida law when determining "actual cash value" of insured's vehicles, which requires that insurers derive the "actual cost to purchase a comparable motor vehicle" from: 1. When comparable motor vehicles are available in the local market area, the cost of two or more such comparable motor vehicles available within the preceding 90 days; 2. The retail cost as determined from a generally recognized used motor vehicle industry source such as: a. An electronic database if the pertinent portions of the valuation

documents generated by the database are provided by the insurer to the first-party insured upon request; or b. A guidebook that is generally available to the general public if the insurer identifies the guidebook used as the basis for the retail cost to the first-party insured upon request; or 3. The retail cost using two or more quotations obtained by the insurer from two or more licensed dealers in the local market area." Fla. Stat. § 626.9743(5).

277.     By knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding its application of an arbitrary "typical negotiation adjustment" to comparable vehicles, and its failure to comply with Florida law, as detailed above, Defendant engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices prohibited by the FDUTPA.

278.     Defendant's misrepresentations and omissions regarding its application of an arbitrary "typical negotiation adjustment" to comparable vehicles were made to Plaintiff and the Class members in a uniform manner.

279.     Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppression of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about Defendant's application of an arbitrary "typical negotiation adjustment" to comparable vehicles in order to reduce the amount of Defendant's total-loss payments to its insureds.

280.     The facts regarding Defendant's application of an arbitrary "typical negotiation adjustment" to comparable vehicles that Defendant knowingly and intentionally misrepresented, omitted, concealed, and/or failed to disclose would be considered material by a reasonable

consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Defendant's insurance coverage.

281.    Plaintiff and Class members had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant had concealed or failed to disclose. Plaintiff and Class members did not, and could not, unravel Defendant's deception on their own.

282.    Defendant had an ongoing duty to Plaintiff and the Class members to refrain from engaging in unfair or deceptive practices under the FDUTPA in the course of its business. Specifically, Defendant owed Plaintiff and Class members a duty to disclose all the material facts concerning its application of an arbitrary "typical negotiation adjustment" to comparable vehicles because Defendant possessed exclusive knowledge of those facts, it intentionally concealed those facts from Plaintiff and the Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

283.    Plaintiff and the Class members were aggrieved by Defendant's violations of the FDUTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts regarding its application of an arbitrary "typical negotiation adjustment" to comparable vehicles, including that the "typical negotiation adjustment" is arbitrarily selected and applied in an inconsistent manner designed to decrease Defendant's total-loss payments under the Policy.

284.    Plaintiff and the Class members purchased Defendant's insurance coverage in reliance on Defendant's misrepresentations, omissions, concealments, and/or failures to disclose material facts regarding its promise to pay ACV in the event of a total loss and Defendant's

64

application of an arbitrary "typical negotiation adjustment" to comparable vehicles to artificially reduce its total-loss payment to insureds.

285.    Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and Class members would not have purchased insurance coverage from Defendant or would not have paid as much for it and, thus, they did not receive the benefit of the bargain and/or they suffered out-of-pocket loss.

286.    Defendant's violations of the FDUTPA present a continuing risk of future harm to Plaintiff and the Class members.

287.    Plaintiff and the Class members seek an order enjoining Defendant's unfair and deceptive acts or practices in violation of the FDUTPA and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the FDUTPA.

## COUNT 25

## BREACH OF CONTRACT

288.    Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

289.    This claim is brought by Plaintiff Linda Lewis (for purposes of this Count, "Plaintiff") individually and on behalf of the Florida Subclass (for purposes of this Count, the "Class").

290.    Plaintiff and each of the other Class members were insured under a policy issued by Defendant, as described herein.

291.    Plaintiff and each of the other Class members made claims under their insurance contracts, which Defendant determined to be first-party total losses under the insurance contract, and additionally determined to be covered claims.

292.    Pursuant to the above-described contractual provisions, upon the total loss of their insured vehicles, Defendant purported to pay Plaintiff and each of the other Class members the ACV of their totaled vehicles.

293.    Defendant, however, failed to pay the ACV of Plaintiff's and Class members' vehicles because Defendant applied an arbitrary and capricious "typical negotiation adjustment" to comparable vehicles in order to reduce their market value and, as a result, Defendant's total-loss payments to insureds.

294.    Defendant failed to comply with Florida law when determining "actual cash value" of insured's vehicles, which requires that insurers derive the "actual cost to purchase a comparable motor vehicle" from: 1. When comparable motor vehicles are available in the local market area, the cost of two or more such comparable motor vehicles available within the preceding 90 days; 2. The retail cost as determined from a generally recognized used motor vehicle industry source such as: a. An electronic database if the pertinent portions of the valuation documents generated by the database are provided by the insurer to the first-party insured upon request; or b. A guidebook that is generally available to the general public if the insurer identifies the guidebook used as the basis for the retail cost to the first-party insured upon request; or 3. The retail cost using two or more quotations obtained by the insurer from two or more licensed dealers in the local market area." Fla. Stat. § 626.9743(5).

295.    Thus, Defendant failed to pay Plaintiff and each of the other Class members the promised ACV of their total-loss vehicles and thereby breached its contract with Plaintiff and each of the other Class members.

296.    As a result of such contractual breaches, Plaintiff and each of the other Class members have been damaged and are entitled to recover damages, as well as costs, pre-judgment and post-judgment interest, injunctive relief, and other relief as appropriate.

## COUNT 26

## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

297.    Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

298.    This claim is brought by Plaintiff Linda Lewis (for purposes of this Count, "Plaintiff") individually and on behalf of the Florida Subclass (for purposes of this Count, the "Class").

299.    Every contract, including the Policy, contains an implied covenant of good faith and fair dealing. The purpose of this duty is to ensure that parties do not take advantage of each other in a way that could not have been contemplated at the time the contract was drafted or do anything that will destroy the other party's right to receive the benefit of the contract.

300.    Disputes involving the exercise of good faith arise when one party is given broad discretion in performing its obligations under the contract. Where a contract specifically vests one of the parties with broad discretion in performing a term of the contract, the covenant of good faith and fair dealing requires that the discretion be exercised reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties.

301.    Under the Policy, Defendant had discretion to perform its obligations under the contract, including the obligation to determine the ACV of an insured's total-loss vehicle. Defendant, however exercised its discretion unreasonably, with an improper motive, and in a manner that was arbitrary, capricious, and inconsistent with the reasonable expectations of the

parties, specifically, to arbitrarily reduce the amount of its total-loss payments to insureds, as alleged herein.

302. Defendant also failed to comply with Florida law when determining "actual cash value" of insured's vehicles, which requires that insurers derive the "actual cost to purchase a comparable motor vehicle" from: 1. When comparable motor vehicles are available in the local market area, the cost of two or more such comparable motor vehicles available within the preceding 90 days; 2. The retail cost as determined from a generally recognized used motor vehicle industry source such as: a. An electronic database if the pertinent portions of the valuation documents generated by the database are provided by the insurer to the first-party insured upon request; or b. A guidebook that is generally available to the general public if the insurer identifies the guidebook used as the basis for the retail cost to the first-party insured upon request; or 3. The retail cost using two or more quotations obtained by the insurer from two or more licensed dealers in the local market area." Fla. Stat. § 626.9743(5).

303. As such, Defendant breached the covenant of good faith and fair dealing by, *inter alia*:

     a. Intentionally applying "typical negotiation adjustments" to undervalue comparable vehicles, and, in turn, insureds' total-loss vehicles;

     b. Failing to pay insureds the ACV of their total-loss vehicles;

     c. Interpreting the terms and conditions of their insurance policies in an unreasonable manner solely in an effort to understate the value of total-loss vehicles and avoid paying insureds the ACV on their total-loss claims;

     d. Inventing spurious grounds for undervaluing total loss claims that are hidden, not specific in dollar amount, not adequately explained, and unreasonable.

304. Defendant's breaches of the covenant of good faith and fair dealing have caused damages to Plaintiff and the Class. Plaintiff's and the Class members' damages include the amounts improperly deducted by Defendant from its payments to insureds on the basis of a typical negotiation adjustment.

**COUNT 27**

**UNJUST ENRICHMENT**

305. Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

306. This claim is brought by Plaintiff Linda Lewis (for purposes of this Count, "Plaintiff") individually and on behalf of the Florida Subclass (for purposes of this Count, the "Class").

307. Plaintiff pleads this claim separately as well as in the alternative to her other claims, as without such claims she would have no adequate legal remedy.

308. Defendant requested and received a monetary benefit at the expense of Plaintiff and Class members in the form of premium payments for automobile insurance coverage.

309. Defendant misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its promise to pay ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation adjustment" to comparable vehicles to artificially reduce its total-loss payments to insureds.

310. Defendant also failed to comply with Florida law when determining "actual cash value" of insured's vehicles, which requires that insurers derive the "actual cost to purchase a comparable motor vehicle" from: 1. When comparable motor vehicles are available in the local market area, the cost of two or more such comparable motor vehicles available within the

preceding 90 days; 2. The retail cost as determined from a generally recognized used motor vehicle industry source such as: a. An electronic database if the pertinent portions of the valuation documents generated by the database are provided by the insurer to the first-party insured upon request; or b. A guidebook that is generally available to the general public if the insurer identifies the guidebook used as the basis for the retail cost to the first-party insured upon request; or 3. The retail cost using two or more quotations obtained by the insurer from two or more licensed dealers in the local market area." Fla. Stat. § 626.9743(5).

311.    If Defendant had not misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its promise to pay ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation adjustment" to comparable vehicles to artificially reduce its total-loss payments to insureds and its failure to comply with Florida law, Plaintiff and the Class members either would not have purchased insurance through Defendant, or they would have paid less for such insurance coverage.

312.    Accordingly, Defendant was unjustly enriched by the premiums paid by Plaintiff and the Class members to the detriment of Plaintiff and the Class members.

313.    Plaintiff and the Class members are, thus, entitled to restitution and disgorgement in the amount Defendant was unjustly enriched, in an amount to be determined at trial.

## COUNT 28

## DECLARATORY JUDGMENT

314.    Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

315. This claim is brought by Plaintiff Linda Lewis (for purposes of this Count, "Plaintiff") individually and on behalf of the Florida Subclass (for purposes of this Count, the "Class").

316. A dispute between Plaintiff and the Class and Defendant is before this Court concerning the construction of the auto insurance policies issued by Defendant, and the rights of Plaintiff and the Class arising under that policy.

317. Plaintiff, individually and on behalf of the Class, seek a declaration of rights and liabilities of the parties herein. Specifically, Plaintiff seeks a declaration that in paying total-loss claims by first-party insureds, it is a breach of Defendant's insurance contract, as well as a violation of law, for Defendant to base the valuation and payment of claims on values of comparable vehicles that have been reduced by arbitrary "typical negotiation adjustments" that are (a) arbitrary, (b) contrary to industry practices and consumer experiences (and therefore not reflective of the vehicle's fair market value), and (c) not as reasonably specific or appropriate as to dollar amount.

318. Defendant's unlawful common policy and general business practice as described herein are ongoing. Accordingly, Defendant has breached, and continues to breach, the express terms of its contracts of insurance with Plaintiff and members of the Class.

319. As a result of these breaches of contract, Plaintiff and the Class members have been injured.

**F.     Georgia**

**COUNT 29**

**BREACH OF CONTRACT**

320.    Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

321.    This Count is brought by Plaintiff Latasha Huff (for purposes of this Count, "Plaintiff") individually and on behalf of the Georgia Subclass (for purposes of this Count, the "Class").

322.    Plaintiff and each of the other Class members were insured under a policy issued by Defendant, as described herein.

323.    Plaintiff and each of the other Class members made claims under their insurance contracts, which Defendant determined to be first-party total losses under the insurance contract, and additionally determined to be covered claims.

324.    Pursuant to the above-described contractual provisions, upon the total loss of their insured vehicles, Defendant purported to pay Plaintiff and each of the other Class members the ACV of their totaled vehicles.

325.    Defendant, however, failed to pay the ACV of Plaintiff's and Class members' vehicles because Defendant applied an arbitrary and capricious "typical negotiation adjustment" to comparable vehicles in order to reduce their market value and, as a result, Defendant's total-loss payments to insureds.

326.    Defendant also failed to comply with Georgia law, which requires insurers to use one of the following four methods to determine "the actual cost less any deductible provided in the policy, to purchase a comparable automobile[:]" "1. The cost of two or more comparable automobiles in the local market area…"; "2. "The cost of two (2) or more comparable automobiles in areas proximate to the local market area…"; "3. One of two or more quotations obtained by the insurer from two or more licensed dealers located within the local market area… when the cost of

comparable automobiles are not available in subparagraphs (a)1. and 2. Above[]"; "4. Any source for determining statistically valid fair market values that meet all of the following criteria which may be in electronic or printed format: (i) The source shall give primary consideration to the values of vehicles in the local market area, or may consider data on vehicles outside the area when comparable vehicles have not been available for data collection in the local market area. (ii) The source's database shall produce values for at least 85% of all makes and models for at least the last fifteen (15) model years, taking into account the values of all major options for such vehicles. (iii) The source shall produce fair market values based on current data available from the area surrounding the location where the insured vehicle was principally garaged or a necessary expansion of parameters (such as time and area) to assure statistical validity." Georgia Rules and Regulations Rule 120-2-52-.06.

327.    Thus, Defendant failed to pay Plaintiff and each of the other Class members the promised ACV of their total-loss vehicles and thereby breached its contract with Plaintiff and each of the other Class members.

328.    As a result of such contractual breaches, Plaintiff and each of the other Class members have been damaged and are entitled to recover damages, as well as costs, pre-judgment and post-judgment interest, injunctive relief, and other relief as appropriate.

## COUNT 30

## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

329.    Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

330.    This Count is brought by Plaintiff Latasha Huff (for purposes of this Count, "Plaintiff") individually and on behalf of the Georgia Subclass (for purposes of this Count, the "Class").

331.    Every contract, including the Policy, contains an implied covenant of good faith and fair dealing. The purpose of this duty is to ensure that parties do not take advantage of each other in a way that could not have been contemplated at the time the contract was drafted or do anything that will destroy the other party's right to receive the benefit of the contract.

332.    Disputes involving the exercise of good faith arise when one party is given broad discretion in performing its obligations under the contract. Where a contract specifically vests one of the parties with broad discretion in performing a term of the contract, the covenant of good faith and fair dealing requires that the discretion be exercised reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties.

333.    Under the Policy, Defendant had discretion to perform its obligations under the contract, including the obligation to determine the ACV of an insured's total-loss vehicle. Defendant, however exercised its discretion unreasonably, with an improper motive, and in a manner that was arbitrary, capricious, and inconsistent with the reasonable expectations of the parties, specifically, to arbitrarily reduce the amount of their total-loss payments to insureds, as alleged herein.

334.    Defendant also failed to comply with Georgia law, which requires insurers to use one of the following four methods to determine "the actual cost less any deductible provided in the policy, to purchase a comparable automobile[:]" "1. The cost of two or more comparable automobiles in the local market area..."; "2. "The cost of two (2) or more comparable automobiles in areas proximate to the local market area..."; "3. One of two or more quotations obtained by the

insurer from two or more licensed dealers located within the local market area... when the cost of comparable automobiles are not available in subparagraphs (a)1. and 2. Above[]"; "4. Any source for determining statistically valid fair market values that meet all of the following criteria which may be in electronic or printed format: (i) The source shall give primary consideration to the values of vehicles in the local market area, or may consider data on vehicles outside the area when comparable vehicles have not been available for data collection in the local market area. (ii) The source's database shall produce values for at least 85% of all makes and models for at least the last fifteen (15) model years, taking into account the values of all major options for such vehicles. (iii) The source shall produce fair market values based on current data available from the area surrounding the location where the insured vehicle was principally garaged or a necessary expansion of parameters (such as time and area) to assure statistical validity." Georgia Rules and Regulations Rule 120-2-52-.06.

335. As such, Defendant breached the covenant of good faith and fair dealing by, *inter alia*:

    a. Intentionally applying "typical negotiation adjustments" to undervalue comparable vehicles, and, in turn, insureds' total-loss vehicles;

    b. Failing to pay insureds the ACV of their total-loss vehicles;

    c. Interpreting the terms and conditions of their insurance policies in an unreasonable manner solely in an effort to understate the value of total-loss vehicles and avoid paying insureds the ACV on their total-loss claims;

    d. Inventing spurious grounds for undervaluing total loss claims that are hidden, not specific in dollar amount, not adequately explained, and unreasonable.

336. Defendant's breaches of the covenant of good faith and fair dealing have caused damages to Plaintiff and the Class. Plaintiff's and the Class members' damages include the

amounts improperly deducted by Defendant from its payments to insureds on the basis of a typical negotiation adjustment.

**COUNT 31**

**UNJUST ENRICHMENT**

337.     Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

338.     This Count is brought by Plaintiff Latasha Huff (for purposes of this Count, "Plaintiff") individually and on behalf of the Georgia Subclass (for purposes of this Count, the "Class").

339.     Plaintiff pleads this claim separately as well as in the alternative to her other claims, as without such claims she would have no adequate legal remedy.

340.     Defendant requested and received a monetary benefit at the expense of Plaintiff and Class members in the form of premium payments for automobile insurance coverage.

341.     Defendant misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its promise to pay ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation adjustment" to comparable vehicles to artificially reduce its total-loss payments to insureds.

342.     Defendant also failed to comply with Georgia law, which requires insurers to use one of the following four methods to determine "the actual cost less any deductible provided in the policy, to purchase a comparable automobile[:]" "1. The cost of two or more comparable automobiles in the local market area…"; "2. "The cost of two (2) or more comparable automobiles in areas proximate to the local market area…"; "3. One of two or more quotations obtained by the insurer from two or more licensed dealers located within the local market area… when the cost of

comparable automobiles are not available in subparagraphs (a)1. and 2. Above[]"; "4. Any source for determining statistically valid fair market values that meet all of the following criteria which may be in electronic or printed format: (i) The source shall give primary consideration to the values of vehicles in the local market area, or may consider data on vehicles outside the area when comparable vehicles have not been available for data collection in the local market area. (ii) The source's database shall produce values for at least 85% of all makes and models for at least the last fifteen (15) model years, taking into account the values of all major options for such vehicles. (iii) The source shall produce fair market values based on current data available from the area surrounding the location where the insured vehicle was principally garaged or a necessary expansion of parameters (such as time and area) to assure statistical validity." Georgia Rules and Regulations Rule 120-2-52-.06.

343.     If Defendant had not misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its promise to pay ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation adjustment" to comparable vehicles to artificially reduce its total-loss payments to insureds and its failure to comply with Georgia law, Plaintiff and the Class members either would not have purchased insurance through Defendant, or they would have paid less for such insurance coverage.

344.     Accordingly, Defendant was unjustly enriched by the premiums paid by Plaintiff and the Class members to the detriment of Plaintiff and the Class members.

345.     Plaintiff and the Class members are, thus, entitled to restitution and disgorgement in the amount Defendant was unjustly enriched, in an amount to be determined at trial.

## COUNT 32

## DECLARATORY JUDGMENT

346. Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

347. This Count is brought by Plaintiff Latasha Huff (for purposes of this Count, "Plaintiff") individually and on behalf of the Georgia Subclass (for purposes of this Count, the "Class").

348. A dispute between Plaintiff and the Class and Defendant is before this Court concerning the construction of the auto insurance policies issued by Defendant, and the rights of Plaintiff and the Class arising under that policy.

349. Plaintiff, individually and on behalf of the Class, seek a declaration of rights and liabilities of the parties herein. Specifically, Plaintiff seeks a declaration that in paying total-loss claims by first-party insureds, it is a breach of Defendant's insurance contract, as well as a violation of law, for Defendant to base the valuation and payment of claims on values of comparable vehicles that have been reduced by arbitrary "typical negotiation adjustments" that are (a) arbitrary, (b) contrary to industry practices and consumer experiences (and therefore not reflective of the vehicle's fair market value), and (c) not as reasonably specific or appropriate as to dollar amount.

350. Defendant's unlawful common policy and general business practice as described herein are ongoing. Accordingly, Defendant has breached, and continues to breach, the express terms of its contracts of insurance with Plaintiff and members of the Class.

351. As a result of these breaches of contract, Plaintiff and the Class members have been injured.

G.      **Illinois**

## COUNT 33

### VIOLATION OF THE ILLINOIS CONSUMER FRAUD
### AND DECEPTIVE BUSINESS PRACTICES ACT 815 ILCS, 505/1, *et seq.*

352.    Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

353.    This Count is brought by Plaintiff Maria Munoz (for purposes of this Count, "Plaintiff") individually and on behalf of the Illinois Subclass (for purposes of this Count, the "Class").

354.    Defendant, Plaintiff, and the Class members are "persons" within the meaning of 815 ILCS 505/l(c).

355.    Plaintiff and the Class members are "consumers" within the meaning of 815 ILCS 505/1(e).

356.    Defendant was and is engaged in "trade" or "commerce" within the meaning of 815 ILCS 505/1(f).

357.    The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFA") prohibits "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of trade or commerce . . . whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2.

358.    As alleged herein, Defendant, through its agents, employees, and/or subsidiaries, violated the Illinois CFA by knowingly and intentionally concealing and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to

comparable vehicles in order to reduce their market value and, as a result, the amount of Defendant's total-loss payments to insureds, as detailed above.

359. Defendant also failed to comply with Illinois law, which requires insurance companies who use an "electronically computerized service" to determine the retail "market value" of a totaled vehicle to "include at least 2 currently available vehicles from licensed dealers in Illinois or 2 vehicles that have been sold by licensed dealers in Illinois…" Illinois Administrative Code Section 919.80(c)(2).

360. By knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding its application of an arbitrary "typical negotiation adjustment" to comparable vehicles, and its failure to comply with Illinois law, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Illinois CFA.

361. Defendant's misrepresentations and omissions regarding their application of an arbitrary "typical negotiation adjustment" to comparable vehicles were made to Plaintiff and the Class members in a uniform manner.

362. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppression of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about Defendant's application of an arbitrary "typical negotiation adjustment" to comparable vehicles in order to reduce the amount of Defendant's total-loss payments to its insureds.

363. The facts regarding Defendant's application of an arbitrary "typical negotiation adjustment" to comparable vehicles that Defendant knowingly and intentionally misrepresented, omitted, concealed, and/or failed to disclose would be considered material by a reasonable

consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Defendant's insurance coverage.

364.     Plaintiff and Class members had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant had concealed or failed to disclose. Plaintiff and Class members did not, and could not, unravel Defendant's deception on their own.

365.     Defendant had an ongoing duty to Plaintiff and the Class members to refrain from engaging in unfair or deceptive practices under the Illinois CFA in the course of its business. Specifically, Defendant owed Plaintiff and Class members a duty to disclose all the material facts concerning its application of an arbitrary "typical negotiation adjustment" to comparable vehicles because Defendant possessed exclusive knowledge of those facts, it intentionally concealed those facts from Plaintiff and the Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

366.     Plaintiff and the Class members were aggrieved by Defendant's violations of the Illinois CFA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts regarding its application of an arbitrary "typical negotiation adjustment" to comparable vehicles, including that the "typical negotiation adjustment" is arbitrarily selected and applied, in an inconsistent manner designed to decrease Defendant's total-loss payments under the Policy.

367.     Plaintiff and the Class members purchased Defendant's insurance coverage in reliance on Defendant's misrepresentations, omissions, concealments, and/or failures to disclose material facts regarding its promise to pay ACV in the event of a total loss and Defendant's

application of an arbitrary "typical negotiation adjustment" to comparable vehicles to artificially reduce its total-loss payments to insureds.

368.     Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and Class members would not have purchased insurance coverage from Defendant, or would not have paid as much for it and, thus, they did not receive the benefit of the bargain and/or they suffered out-of-pocket loss.

369.     Defendant's violations of the Illinois CFA present a continuing risk of future harm to Plaintiff and the Class members.

370.     Plaintiff and the Class members seek an order enjoining Defendant's unfair and deceptive acts or practices in violation of the Illinois CFA and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Illinois CFA.

## COUNT 34

## BREACH OF CONTRACT

371.     Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

372.     This Count is brought by Plaintiff Maria Munoz (for purposes of this Count, "Plaintiff") individually and on behalf of the Illinois Subclass (for purposes of this Count, the "Class").

373.     Plaintiff and each of the other Class members were insured under a policy issued by Defendant, as described herein.

374.     Plaintiff and each of the other Class members made claims under their insurance contracts, which Defendant determined to be first-party total losses under the insurance contract, and additionally determined to be covered claims.

375.     Pursuant to the above-described contractual provisions, upon the total loss of their insured vehicles, Defendant purported to pay Plaintiff and each of the other Class members the ACV of their totaled vehicles.

376.     Defendant, however, failed to pay the ACV of Plaintiff's and Class members' vehicles because Defendant applied an arbitrary and capricious "typical negotiation adjustment"" to comparable vehicles in order to reduce their market value and, as a result, Defendant's total-loss payments to insureds.

377.     Defendant also failed to comply with Illinois law, which requires insurance companies who use an "electronically computerized service" to determine the retail "market value" of a totaled vehicle to "include at least 2 currently available vehicles from licensed dealers in Illinois or 2 vehicles that have been sold by licensed dealers in Illinois…"   Illinois Administrative Code Section 919.80(c)(2).

378.     Thus, Defendant failed to pay Plaintiff and each of the other Class members the promised ACV of their total-loss vehicles and thereby breached its contract with Plaintiff and each of the other Class members.

379.     As a result of such contractual breaches, Plaintiff and each of the other Class members have been damaged and are entitled to recover damages, as well as costs, pre-judgment and post-judgment interest, injunctive relief, and other relief as appropriate.

## COUNT 35

## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

380.     Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

381.     This Count is brought by Plaintiff Maria Munoz (for purposes of this Count, "Plaintiff") individually and on behalf of the Illinois Subclass (for purposes of this Count, the "Class").

382.     Every contract, including the Policy, contains an implied covenant of good faith and fair dealing. The purpose of this duty is to ensure that parties do not take advantage of each other in a way that could not have been contemplated at the time the contract was drafted or do anything that will destroy the other party's right to receive the benefit of the contract.

383.     Disputes involving the exercise of good faith arise when one party is given broad discretion in performing its obligations under the contract. Where a contract specifically vests one of the parties with broad discretion in performing a term of the contract, the covenant of good faith and fair dealing requires that the discretion be exercised reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties.

384.     Under the Policy, Defendant had discretion to perform its obligations under the contract, including the obligation to determine the ACV of an insured's total-loss vehicle. Defendant, however exercised its discretion unreasonably, with an improper motive, and in a manner that was arbitrary, capricious, and inconsistent with the reasonable expectations of the parties, specifically, to arbitrarily reduce the amount of its total-loss payments to insureds, as alleged herein.

385.     Defendant also failed to comply with Illinois law, which requires insurance companies who use an "electronically computerized service" to determine the retail "market value" of a totaled vehicle to "include at least 2 currently available vehicles from licensed dealers in Illinois or 2 vehicles that have been sold by licensed dealers in Illinois…"   Illinois Administrative Code Section 919.80(c)(2).

386.     As such, Defendant breached the covenant of good faith and fair dealing by, *inter alia*:

    a.  Intentionally applying "typical negotiation adjustments" to undervalue comparable vehicles, and, in turn, insureds' total-loss vehicles;

    b.  Failing to pay insureds the ACV of their total-loss vehicles;

    c.  Interpreting the terms and conditions of its insurance policies in an unreasonable manner solely in an effort to understate the value of total-loss vehicles and avoid paying insureds the ACV on their total-loss claims;

    d.  Inventing spurious grounds for undervaluing total-loss claims that are hidden, not specific in dollar amount, not adequately explained, and unreasonable.

387.     Defendant's breaches of the covenant of good faith and fair dealing have caused damages to Plaintiff and the Class. Plaintiff's and the Class members' damages include the amounts improperly deducted by Defendant from its payments to insureds on the basis of a typical negotiation adjustment.

## COUNT 36

## UNJUST ENRICHMENT

388.     Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

389.     This Count is brought by Plaintiff Maria Munoz (for purposes of this Count, "Plaintiff") individually and on behalf of the Illinois Subclass (for purposes of this Count, the "Class").

390.     Plaintiff pleads this claim separately as well as in the alternative to their other claims, as without such claims they would have no adequate legal remedy.

391.     Defendant requested and received a monetary benefit at the expense of Plaintiff and Class members in the form of premium payments for automobile insurance coverage.

392.     Defendant misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its promise to pay ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation adjustment" to comparable vehicles to artificially reduce its total-loss payments to insureds.

393.     Defendant also failed to comply with Illinois law, which requires insurance companies who use an "electronically computerized service" to determine the retail "market value" of a totaled vehicle to "include at last 2 currently available vehicles from licensed dealers in Illinois or 2 vehicles that have been sold by licensed dealers in Illinois…"   Illinois Administrative Code Section 919.80(c)(2).

394.     If Defendant had not misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its promise to pay ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation adjustment" to comparable vehicles to artificially reduce its total-loss payments to insureds and its failure to comply with Illinois law, Plaintiff and the Class members either would not have purchased insurance through Defendant, or they would have paid less for such insurance coverage.

395.     Accordingly, Defendant was unjustly enriched by the premiums paid by Plaintiff and the Class members to the detriment of Plaintiff and the Class members.

396.     Plaintiff and the Class members are, thus, entitled to restitution and disgorgement in the amount Defendant was unjustly enriched, in an amount to be determined at trial.

**COUNT 37**

**DECLARATORY JUDGMENT**

397. Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

398. This Count is brought by Plaintiff Maria Munoz (for purposes of this Count, "Plaintiff") individually and on behalf of the Illinois Subclass (for purposes of this Count, the "Class").

399. A dispute between Plaintiff and the Class and Defendant is before this Court concerning the construction of the auto insurance policies issued by Defendant, and the rights of Plaintiff and the Class arising under that policy.

400. Plaintiff, individually and on behalf of the Class, seek a declaration of rights and liabilities of the parties herein. Specifically, Plaintiff seeks a declaration that in paying total-loss claims by first-party insureds, it is a breach of Defendant's insurance contract, as well as a violation of law, for Defendant to base the valuation and payment of claims on values of comparable vehicles that have been reduced by arbitrary "typical negotiation adjustments" that are (a) arbitrary, (b) contrary to industry practices and consumer experiences (and therefore not reflective of the vehicle's fair market value), and (c) not as reasonably specific or appropriate as to dollar amount.

401. Defendant's unlawful common policy and general business practice as described herein are ongoing. Accordingly, Defendant has breached, and continues to breach, the express terms of their contracts of insurance with Plaintiff and members of the Class.

402. As a result of these breaches of contract, Plaintiff and the Class members have been injured.

H.    **Kansas**

## COUNT 38

## BREACH OF CONTRACT

403.    Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

404.    This claim is brought by Plaintiff Kim Benson (for purposes of this Count, "Plaintiff") individually and on behalf of the Kansas Subclass (for purposes of this Count, the "Class").

405.    Plaintiff and each of the other Class members were insured under a policy issued by Defendant, as described herein.

406.    Plaintiff and each of the other Class members made claims under their insurance contracts, which Defendant determined to be first-party total losses under the insurance contract, and additionally determined to be covered claims.

407.    Pursuant to the above-described contractual provisions, upon the total loss of their insured vehicles, Defendant purported to pay Plaintiff and each of the other Class members the ACV of their totaled vehicles.

408.    Defendant, however, failed to pay the ACV of Plaintiff's and Class members' vehicles because Defendant applied an arbitrary and capricious "typical negotiation adjustment" to comparable vehicles in order to reduce their market value and, as a result, Defendant's total-loss payments to insureds.

409.    Defendant also failed to comply with Kansas law, which requires insurers who settle a total loss claim with a cash settlement on the basis of actual cash value to determine "the actual cost, less any deductible provided in the policy, to purchase a comparable automobile" using "any source or method for determining statistically valid fair market value that meets both of the

following criteria:" "(A) The source or method's database, including nationally recognized automobile evaluation publications, shall provide values for at least eighty-five percent (85%) of all makes and models of private passenger vehicles for the last fifteen (15) model years taking into account the values for all major options for such vehicles; and" "(B) the source, method, or publication shall provide fair market values for a comparable automobile based on current data available for the local market area as defined in subsection (j)(2)[,]" and provides that "When an automobile total loss is settled on a basis which deviates from the methods and criteria described in subsections (a)(1) and (a)(2)(A) and (B) of this section, the deviation must be supported by documentation giving the particulars of the automobile condition and the basis for the deviation. Any deviations from such cost, including deduction for salvage, must be measurable, discernible, itemized and specified as to dollar amount and shall be appropriate in amount. The basis for such settlement shall be fully explained to the claimant." Kan. Admin. Regs. § 40-1-34.

410.    Thus, Defendant failed to pay Plaintiff and each of the other Class members the promised ACV of their total-loss vehicles and thereby breached its contract with Plaintiff and each of the other Class members.

411.    As a result of such contractual breaches, Plaintiff and each of the other Class members have been damaged and are entitled to recover damages, as well as costs, pre-judgment and post-judgment interest, injunctive relief, and other relief as appropriate.

## COUNT 39

## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

412.    Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

413.     This claim is brought by Plaintiff Kim Benson (for purposes of this Count, "Plaintiff") individually and on behalf of the Kansas Subclass (for purposes of this Count, the "Class").

414.     Every contract, including the Policy, contains an implied covenant of good faith and fair dealing. The purpose of this duty is to ensure that parties do not take advantage of each other in a way that could not have been contemplated at the time the contract was drafted or do anything that will destroy the other party's right to receive the benefit of the contract.

415.     Disputes involving the exercise of good faith arise when one party is given broad discretion in performing its obligations under the contract. Where a contract specifically vests one of the parties with broad discretion in performing a term of the contract, the covenant of good faith and fair dealing requires that the discretion be exercised reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties.

416.     Under the Policy, Defendant had discretion to perform its obligations under the contract, including the obligation to determine the ACV of an insured's total-loss vehicle. Defendant, however exercised its discretion unreasonably, with an improper motive, and in a manner that was arbitrary, capricious, and inconsistent with the reasonable expectations of the parties, specifically, to arbitrarily reduce the amount of its total-loss payments to insureds, as alleged herein.

417.     Defendant also failed to comply with Kansas law, which requires insurers who settle a total loss claim with a cash settlement on the basis of actual cash value to determine "the actual cost, less any deductible provided in the policy, to purchase a comparable automobile" using "any source or method for determining statistically valid fair market value that meets both of the following criteria:" "(A) The source or method's database, including nationally recognized

automobile evaluation publications, shall provide values for at least eighty-five percent (85%) of all makes and models of private passenger vehicles for the last fifteen (15) model years taking into account the values for all major options for such vehicles; and" "(B) the source, method, or publication shall provide fair market values for a comparable automobile based on current data available for the local market area as defined in subsection (j)(2)[,]" and provides that "When an automobile total loss is settled on a basis which deviates from the methods and criteria described in subsections (a)(1) and (a)(2)(A) and (B) of this section, the deviation must be supported by documentation giving the particulars of the automobile condition and the basis for the deviation. Any deviations from such cost, including deduction for salvage, must be measurable, discernible, itemized and specified as to dollar amount and shall be appropriate in amount. The basis for such settlement shall be fully explained to the claimant." Kan. Admin. Regs. § 40-1-34.

418.  As such, Defendant breached the covenant of good faith and fair dealing by, *inter alia*:

a.  Intentionally applying "typical negotiation adjustments" to undervalue comparable vehicles, and, in turn, insureds' total-loss vehicles;

b.  Failing to pay insureds the ACV of their total-loss vehicles;

c.  Interpreting the terms and conditions of its insurance policies in an unreasonable manner solely in an effort to understate the value of total-loss vehicles and avoid paying insureds the ACV on their total-loss claims;

d.  Inventing spurious grounds for undervaluing total loss claims that are hidden, not specific in dollar amount, not adequately explained, and unreasonable.

419.  Defendant's breaches of the covenant of good faith and fair dealing have caused damages to Plaintiff and the Class. Plaintiff's and the Class members' damages include the

amounts improperly deducted by Defendant from its payments to insureds on the basis of a typical negotiation adjustment.

## COUNT 40

### UNJUST ENRICHMENT

420.     Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

421.     This claim is brought by Plaintiff Kim Benson (for purposes of this Count, "Plaintiff") individually and on behalf of the Kansas Subclass (for purposes of this Count, the "Class").

422.     Plaintiff pleads this claim separately as well as in the alternative to her other claims, as without such claims she would have no adequate legal remedy.

423.     Defendant requested and received a monetary benefit at the expense of Plaintiff and Class members in the form of premium payments for automobile insurance coverage.

424.     Defendant misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its promise to pay ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation adjustment" to comparable vehicles to artificially reduce its total-loss payments to insureds.

425.     Defendant also failed to comply with Kansas law, which requires insurers who settle a total loss claim with a cash settlement on the basis of actual cash value to determine "the actual cost, less any deductible provided in the policy, to purchase a comparable automobile" using "any source or method for determining statistically valid fair market value that meets both of the following criteria:" "(A) The source or method's database, including nationally recognized automobile evaluation publications, shall provide values for at least eighty-five percent (85%) of

all makes and models of private passenger vehicles for the last fifteen (15) model years taking into account the values for all major options for such vehicles; and" "(B) the source, method, or publication shall provide fair market values for a comparable automobile based on current data available for the local market area as defined in subsection (j)(2)[,]" and provides that "When an automobile total loss is settled on a basis which deviates from the methods and criteria described in subsections (a)(1) and (a)(2)(A) and (B) of this section, the deviation must be supported by documentation giving the particulars of the automobile condition and the basis for the deviation. Any deviations from such cost, including deduction for salvage, must be measurable, discernible, itemized and specified as to dollar amount and shall be appropriate in amount. The basis for such settlement shall be fully explained to the claimant." Kan. Admin. Regs. § 40-1-34.

426.     If Defendant had not misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its promise to pay ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation adjustment" to comparable vehicles to artificially reduce its total-loss payments to insureds and its failure to comply with Kansas law, Plaintiff and the Class members either would not have purchased insurance through Defendant, or they would have paid less for such insurance coverage.

427.     Accordingly, Defendant was unjustly enriched by the premiums paid by Plaintiff and the Class members to the detriment of Plaintiff and the Class members.

428.     Plaintiff and the Class members are, thus, entitled to restitution and disgorgement in the amount Defendant was unjustly enriched, in an amount to be determined at trial.

## COUNT 41

## DECLARATORY JUDGMENT

429.   Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

430.   This claim is brought by Plaintiff Kim Benson (for purposes of this Count, "Plaintiff") individually and on behalf of the Kansas Subclass (for purposes of this Count, the "Class").

431.   A dispute between Plaintiff and the Class and Defendant is before this Court concerning the construction of the auto insurance policies issued by Defendant, and the rights of Plaintiff and the Class arising under that policy.

432.   Plaintiff, individually and on behalf of the Class, seeks a declaration of rights and liabilities of the parties herein. Specifically, Plaintiff seeks a declaration that in paying total-loss claims by first-party insureds, it is a breach of Defendant's insurance contract, as well as a violation of law, for Defendant to base the valuation and payment of claims on values of comparable vehicles that have been reduced by arbitrary "typical negotiation adjustments" that are (a) arbitrary, (b) contrary to industry practices and consumer experiences (and therefore not reflective of the vehicle's fair market value), and (c) not as reasonably specific or appropriate as to dollar amount.

433.   Defendant's unlawful common policy and general business practice as described herein are ongoing. Accordingly, Defendant has breached, and continues to breach, the express terms of its contracts of insurance with Plaintiff and members of the Class.

434.   As a result of these breaches of contract, Plaintiff and the Class members have been injured.

I.     **Louisiana**

## COUNT 42

## BREACH OF CONTRACT

435.     Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

436.     This claim is brought by Plaintiff Evelyn Brown (for purposes of this Count, "Plaintiff") individually and on behalf of the Louisiana Subclass (for purposes of this Count, the "Class").

437.     Plaintiff and each of the other Class members were insured under a policy issued by Defendant, as described herein.

438.     Plaintiff and each of the other Class members made claims under their insurance contracts, which Defendant determined to be first-party total losses under the insurance contract, and additionally determined to be covered claims.

439.     Pursuant to the above-described contractual provisions, upon the total loss of their insured vehicles, Defendant purported to pay Plaintiff and each of the other Class members the ACV of their totaled vehicles.

440.     Defendant, however, failed to pay the ACV of Plaintiff's and Class members' vehicles because Defendant applied an arbitrary and capricious "typical negotiation adjustment" to comparable vehicles in order to reduce their market value and, as a result, Defendant's total-loss payments to insureds.

441.     Defendant also failed to comply with Louisiana law, which requires insurers making a cash settlement for a total loss on the basis of actual cash value to determine the "actual cost to purchase comparable motor vehicle… by using one of the following: (a) A fair market value survey conducted using qualified retail automobile dealers in the local market area as

resources… b) The retail cost as determined from a generally recognized used motor vehicle industry source; such as, an electronic database, if the valuation documents generated by the database are provided to the first-party claimant, or a guidebook that is available to the general public… [or] (c) A qualified expert appraiser selected and agreed upon by the insured and insurer." Louisiana Laws RS 22:1892.

442.     Thus, Defendant failed to pay Plaintiff and each of the other Class members the promised ACV of their total-loss vehicles and thereby breached its contract with Plaintiff and each of the other Class members.

443.     As a result of such contractual breaches, Plaintiff and each of the other Class members have been damaged and are entitled to recover damages, as well as costs, pre-judgment and post-judgment interest, injunctive relief, and other relief as appropriate.

## COUNT 43

## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

444.     Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

445.     This claim is brought by Plaintiff Evelyn Brown (for purposes of this Count, "Plaintiff") individually and on behalf of the Louisiana Subclass (for purposes of this Count, the "Class").

446.     Every contract, including the Policy, contains an implied covenant of good faith and fair dealing. The purpose of this duty is to ensure that parties do not take advantage of each other in a way that could not have been contemplated at the time the contract was drafted or do anything that will destroy the other party's right to receive the benefit of the contract.

447.    Disputes involving the exercise of good faith arise when one party is given broad discretion in performing its obligations under the contract. Where a contract specifically vests one of the parties with broad discretion in performing a term of the contract, the covenant of good faith and fair dealing requires that the discretion be exercised reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties.

448.    Under the Policy, Defendant had discretion to perform its obligations under the contract, including the obligation to determine the ACV of an insured's total-loss vehicle. Defendant, however exercised its discretion unreasonably, with an improper motive, and in a manner that was arbitrary, capricious, and inconsistent with the reasonable expectations of the parties, specifically, to arbitrarily reduce the amount of its total-loss payments to insureds, as alleged herein.

449.    Defendant also failed to comply with Louisiana law, which requires insurers making a cash settlement for a total loss on the basis of actual cash value to determine the "actual cost to purchase comparable motor vehicle... by using one of the following: (a) A fair market value survey conducted using qualified retail automobile dealers in the local market area as resources... b) The retail cost as determined from a generally recognized used motor vehicle industry source; such as, an electronic database, if the valuation documents generated by the database are provided to the first-party claimant, or a guidebook that is available to the general public... [or] (c) A qualified expert appraiser selected and agreed upon by the insured and insurer." Louisiana Laws RS 22:1892.

450.    As such, Defendant breached the covenant of good faith and fair dealing by, *inter alia*:

      a.    Intentionally applying "typical negotiation adjustments" to undervalue comparable vehicles, and, in turn, insureds' total-loss vehicles;

b.  Failing to pay insureds the ACV of their total-loss vehicles;

c.  Interpreting the terms and conditions of their insurance policies in an unreasonable manner solely in an effort to understate the value of total-loss vehicles and avoid paying insureds the ACV on their total-loss claims;

d.  Inventing spurious grounds for undervaluing total loss claims that are hidden, not specific in dollar amount, not adequately explained, and unreasonable.

451.    Defendant's breaches of the covenant of good faith and fair dealing have caused damages to Plaintiff and the Class. Plaintiff's and the Class members' damages include the amounts improperly deducted by Defendant from its payments to insureds on the basis of a typical negotiation adjustment.

## COUNT 44

## UNJUST ENRICHMENT

452.    Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

453.    This claim is brought by Plaintiff Evelyn Brown (for purposes of this Count, "Plaintiff") individually and on behalf of the Louisiana Subclass (for purposes of this Count, the "Class").

454.    Plaintiff pleads this claim separately as well as in the alternative to her other claims, as without such claims she would have no adequate legal remedy.

455.    Defendant requested and received a monetary benefit at the expense of Plaintiff and Class members in the form of premium payments for automobile insurance coverage.

456.    Defendant misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its promise to pay ACV in the event of a total loss, specifically Defendant's

application of an arbitrary "typical negotiation adjustment" to comparable vehicles to artificially reduce its total-loss payments to insureds.

457.    Defendant also failed to comply with Louisiana law, which requires insurers making a cash settlement for a total loss on the basis of actual cash value to determine the "actual cost to purchase comparable motor vehicle…by using one of the following: (a) A fair market value survey conducted using qualified retail automobile dealers in the local market area as resources…. b) The retail cost as determined from a generally recognized used motor vehicle industry source; such as, an electronic database, if the valuation documents generated by the database are provided to the first-party claimant, or a guidebook that is available to the general public…. [or] (c) A qualified expert appraiser selected and agreed upon by the insured and insurer."  Louisiana Laws RS 22:1892.

458.    If Defendant had not misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its promise to pay ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation adjustment" to comparable vehicles to artificially reduce its total-loss payments to insureds and its failure to comply with Louisiana law, Plaintiff and the Class members either would not have purchased insurance through Defendant, or they would have paid less for such insurance coverage.

459.    Accordingly, Defendant was unjustly enriched by the premiums paid by Plaintiff and the Class members to the detriment of Plaintiff and the Class members.

460.    Plaintiff and the Class members are, thus, entitled to restitution and disgorgement in the amount Defendant was unjustly enriched, in an amount to be determined at trial.

## COUNT 45

## DECLARATORY JUDGMENT

461. Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

462. This claim is brought by Plaintiff Evelyn Brown (for purposes of this Count, "Plaintiff") individually and on behalf of the Louisiana Subclass (for purposes of this Count, the "Class").

463. A dispute between Plaintiff and the Class and Defendant is before this Court concerning the construction of the auto insurance policies issued by Defendant, and the rights of Plaintiff and the Class arising under that policy.

464. Plaintiff, individually and on behalf of the Class, seeks a declaration of rights and liabilities of the parties herein. Specifically, Plaintiff seeks a declaration that in paying total-loss claims by first-party insureds, it is a breach of Defendant's insurance contract, as well as a violation of law, for Defendant to base the valuation and payment of claims on values of comparable vehicles that have been reduced by arbitrary "typical negotiation adjustments" that are (a) arbitrary, (b) contrary to industry practices and consumer experiences (and therefore not reflective of the vehicle's fair market value), and (c) not as reasonably specific or appropriate as to dollar amount.

465. Defendant's unlawful common policy and general business practice as described herein are ongoing. Accordingly, Defendant has breached, and continues to breach, the express terms of its contracts of insurance with Plaintiff and members of the Class.

466. As a result of these breaches of contract, Plaintiff and the Class members have been injured.