UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CHRISTINA HOLMES, Individually, and on behalf
of all others similarly situated,

                          Plaintiff,

v.                                                          3:22-CV-0823
                                                            (GTS/TWD)
CAPITAL ONE, N.A.,

                          Defendant.
_____

APPEARANCES:                                    OF COUNSEL:

SHAMIS & GENTILE, P.A.                          ANDREW J. SHAMIS, ESQ.
  Counsel for Plaintiff
14 N.E. 1st Avenue – Suite 705
Miami, FL 33132

EDELSBERG LAW, P.A.                             CHRISTOPHER C. GOLD, ESQ.
  Co-counsel for Plaintiff                      SCOTT A. EDELSBERG, I, ESQ.
   20900 NE 30th Avenue – Suite 417
 Aventura, FL 33180


KALIEL GOLD PLLC                                JEFFREY D. KALIEL, ESQ.
  Co-counsel for Plaintiff                      SOPHIA GOREN GOLD, ESQ.
1100 15th Street NW – 4th Floor
Washington, DC 20005


MCGUIRE WOODS LLP                               PHILIP A. GOLDSTEIN, ESQ.
  Counsel for Defendant                         EMILY Y. ROTTMANN, ESQ.
1251 Avenue of the Americas Ste 20th Floor      JARROD D. SHAW, ESQ.
New York, NY 10020


GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

Currently before the Court, in this proposed class action filed by Christina Holmes individually, and on behalf of all others similarly situated ("Plaintiff") against Capital One, N.A. ("Defendant"), is Defendant's motion to dismiss Plaintiff's Amended Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  (Dkt. No. 32.)  For the reasons set forth below, Defendant's motion is granted, and Plaintiff's Amended Complaint is dismissed.

## I.    RELEVANT BACKGROUND

### A.    Summary of Plaintiff's Amended Complaint

Generally, liberally construed, Plaintiff's Amended Complaint asserts the following five claims on behalf of a Nationwide Class and/or a New York State Class based on Defendant's actions and statements regarding Zelle, a money transfer service owned in part by Defendant: (1) a claim for deceptive acts or practices under Section 349 of the New York General Business Law Section 349, asserted on behalf of the New York State Class; (2) a claim for breach of contract including breach of the covenant of good faith and fair dealing, asserted on behalf of both classes; (3) a claim for violation of the Electronic Fund Transfer Act ("EFTA"), asserted on behalf of both classes; (4) a claim for negligent misrepresentation, asserted on behalf of both classes; and (5) a claim for unjust enrichment, asserted on behalf of the Nationwide Class in the alternative to Plaintiff's claim for breach of contract. (Dkt. No. 29.)

Generally, these claims arise from the following alleged facts.  (Dkt. No. 29.)  On or before March 4, 2021, Plaintiff signed up for the Zelle service through Defendant.  (*Id*.)  Plaintiff did so based on Defendant's claims that Zelle is a safe, free, and convenient way to electronically transfer money.  (*Id*.)  At the time she signed up, Plaintiff was not informed of the security risks

of using Zelle.  (*Id*.)  Rather, Defendant failed to accurately represent the unique features of

Zelle in its marketing and contractual representations ("Account Disclosures").  (*Id*.)  If she had

known about on risk of fraud while using Zelle, Plaintiff would not have signed up for Zelle.

(*Id*.)  On March 4, 2021, Plaintiff transferred $40 via Zelle to an individual who claimed be

selling items on Facebook Marketplace. (*Id*.)[1]  When Plaintiff realized that she had transferred

money to someone who had no intention of sending her goods, she alerted Defendant.  (*Id*.)

However, Defendant refused to refund her money.  (*Id*.)  Familiarity with the factual allegations

supporting these claims in Plaintiff's Amended Complaint is assumed in this Decision and Order,

which is intended primarily for review by the parties.

> **B.      Summary of Parties' Briefing on Defendant's Motion to Dismiss**

> **1.      Defendant's Memorandum of Law**

Generally, in support of its motion to dismiss, Defendant asserts six arguments.  (Dkt.

No. 32, Attach. 1.)  First, Defendant argues that the Amended Complaint fails to state a claim for

a violation of the EFTA for two reasons (which are based on the factual allegations of the

Amended Complaint and the documents that may be considered incorporated by referenced in

and/or integral to it): (1), the EFTA provides a framework for electronic fund transfers which

Defendant's Account Disclosures followed, defining an "unauthorized" electronic fund transfer

to be a "transfer from a consumer's account initiated by a person other than the consumer

without actual authority to initiate such transfer and from which the consumer receives no

---

[1]      Although Plaintiff's Amended Complaint expressly alleges that it was the "fraudster" who transferred $40 from her personal bank account using Zelle (Dkt. No. 29, at ¶¶ 82-83), in their entirety the factual allegations of the Amended Complaint and documents incorporated by reference in or integral to it (which describe how Zelle works) plausibly suggest that it was Plaintiff herself who transferred the $40 in question to the fraudster using Zelle.

benefit," pursuant to 15 U.S.C. § 1693a(12); and (2) Plaintiff admits the transaction was authorized because she voluntarily made the transfer at issue.  (Dkt. No. 32, Attach. 1.)

Second, Defendant argues that the Amended Complaint fails to state a claim for violating Section 349 of the New York General Business Law  for each of two alternative reasons (which, again, are based on the factual allegations of the Amended Complaint and the documents that may be considered incorporated by referenced in and/or integral to it): (1) Defendant complied with Federal Regulation E ("Regulation E") and therefore has a complete defense under Section 349(d), because Defendant's Account Disclosures state the potential of losing funds in a user's account, and Defendant's website clearly expresses Zelle as a service to send money to "friends, family, and others you trust"; and (2) in any event, the Amended Complaint fails to allege facts plausibly suggesting the deceptive acts or practices by Defendant and provides only conclusory allegations of a supposed "secret policy" that Defendant will not reimburse Zelle losses.  (*Id.* at 16-22.)

Third, Defendant argues that the Amended Complaint fails to state a claim for breach of contract  for three reasons (based on the factual allegations of the Amended Complaint and the documents that may be considered incorporated by referenced in and/or integral to it): (1) no violation of any contract provision occurred based on the plain language of the Account Disclosures; (2) the Account Disclosures do not state that funds lost due to fraud will be reimbursed; and (3) rather, the Account Disclosures state that a customer should notify Defendant if an electronic fund transfer was made "without your permission" (and here Plaintiff has alleged facts plausibly suggesting that she did indeed authorize the transfer).  (*Id.* at 22-24.)

Fourth, Defendant argues that the Amended Complaint fails to state a claim for breach of

good faith and fair dealing because (based on the factual allegations of the Amended Complaint and the documents that may be considered incorporated by reference in and/or integral to it) the Amended Complaint fails to allege facts plausibly suggesting the existence of a breach of a contractual term, as is required.  (*Id.* at 24-25.)

Fifth, Defendant argues that the Amended Complaint  fails to state a claim for negligent misrepresentation for each of three alternative reasons (based on the factual allegations of the Amended Complaint and the documents that may be considered incorporated by referenced in and/or integral to it): (1) Defendant owes no duty of care to Plaintiff because the typical banking relationship does not generally give rise to a "special relationship"; (2) in any event, the Amended Complaint fails to allege facts plausibly suggesting the existence of a false representation because Defendant did in fact disclose the risks of using Zelle in its Account Disclosures, on Defendant's website, and on it mobile banking platforms; and (3) in any event, the Amended Complaint fails to allege facts plausibly suggesting the existence of a causal connection between Defendant's disclosures and the loss Plaintiff incurred.  (*Id.* at 25-29.)

Sixth and finally, Defendant argues that the Amended Complaint  fails to state a claim for unjust enrichment for each of two alternative reasons (based on the factual allegations of the Amended Complaint and the documents that may be considered incorporated by referenced in and/or integral to it): (1) there can be no such claim based on an implied contract theory where, as here, an express contract governs the relationship between the parties; and (2) in any event, the Amended Complaint fails to allege facts plausibly suggesting the existence of the elements of an unjust enrichment claim because Defendant received no direct benefit from Plaintiff transferring funds to an unknown fraudster.  (*Id.* at 29-32.)

**2.      Plaintiff's Opposition Memorandum of Law**

Generally, in Plaintiff's opposition to Defendant's motion, Plaintiff asserts five arguments.  (Dkt. No. 37.)  First, Plaintiff argues that Defendant's misrepresentations and omissions are actionable under Section 349 of the New York General Business Law (also known as the New York Consumer Protection Statute) for three reasons: (1) Defendant produced materially misleading marketing materials regarding the Zelle service through its representations that Zelle was "simple, safe and free" and "secure"; (2) omissions regarding Zelle are actionable under Section 349 because Defendant omitted material facts about the service, including the widespread instances of fraud, Zelle's dissimilarity from other consumer payment services that warn accountholders about the risk of fraud prior to every transfer, and Defendant's "secret policy" of not reimbursing fraud losses under any circumstance; and (3) Defendant's arguments for dismissal are meritless because (a) Plaintiff adequately alleged misrepresentations and/or omissions that were present at the time she signed up for Zelle, (b) Defendant cannot disclaim prominent marketing representations in fine print within a contract, (c) there's a factual dispute over which contract Plaintiff agreed to, (d) the contract does not provide warnings or prohibitions for sending money to those other than friends or family, (e) Plaintiff does not allege that the Bank's deception caused her to fall for a scam, but rather she alleges that the Bank's deceptive marketing lured her into signing up for Zelle in the first place, and (f) Defendant's complete defense from Section 349 is not permissible because neither the EFTA nor Regulation E contains any provision regulating advertisements.  (*Id.* at 13-24.)

Second, Plaintiff argues that Defendant breached the express term of the contract stating that "[w]e . . . will correct any error promptly," because the undefined term "error" can

6

reasonably be interpreted to mean a "mistake" and cover users who were defrauded into transferring funds.  (*Id.* at 25-27.)

Third, Plaintiff argues that her claim of breach of implied covenant of good faith and fair dealing is proper because Defendant adopted an unreasonable and unfair understanding of the undefined contract term "error."  (*Id.* at 27-28.)

Fourth, Plaintiff argues that Defendant violated the EFTA for three reasons: (1) Plaintiff's fund transfer was unauthorized pursuant to Section 1693(a)(12) of the EFTA because the fraudster initiated the chain of events resulting in the transfer when he/she instructed Plaintiff to send money and she complied; (2) Defendant breached its obligation to resolve "errors" because Regulation E of the EFTA defines "errors" as "an unauthorized" and "an incorrect" transfer; and (3) Defendant failed to properly investigate Plaintiff's incident by refusing to open a claim, despite having received timely notice.  (*Id.* at 28-32.)

Fifth, Plaintiff argues that she sufficiently stated a claim for negligent misrepresentation for three reasons: (1) Defendant had a special relationship with Plaintiff giving rise to a duty to disclose because Defendant possessed superior knowledge regarding Zelle; (2) Plaintiff alleges actionable false representations; and (3) Plaintiff sufficiently pled justifiable reliance.  (*Id.* at 32-33.)

### 3.    Defendant's Reply Memorandum of Law

Generally, in its reply, Defendant asserts four arguments.  (Dkt. No. 41.)   First, Defendant argues that the Amended Complaint has not stated a cognizable claim for a violation of the EFTA because (based on the factual allegations of the Amended Complaint and the documents that may be considered incorporated by referenced in and/or integral to it) the transfer

was authorized and correct (with regard to both the amount sent and the identity of the recipient), and her dispute was sufficiently investigated (in compliance with Regulation E) by Defendant reviewing its own records of the incident. (*Id.* at 6-9.)

Second, Defendant argues that the Amended Complaint fails to state a claim for violating Section 349 of the New York General Business Law for two reasons (based on the factual allegations of the Amended Complaint and the documents that may be considered incorporated by referenced in and/or integral to it): (1) Defendant made no misrepresentation because a reasonable consumer would not be able to identify any statements by Defendant that would be understood as a promise to insure them from online scams; and (2) Defendant's disclosures are clear and consistent because the risks are stated during the enrollment process, in the Account Disclosures, on Defendant's website, and mobile applications. (*Id.* at 9-12.)

Third, Defendant argues that the Amended Complaint fails to state a claim for breach of contract because (based on the factual allegations of the Amended Complaint and the documents that may be considered incorporated by referenced in and/or integral to it) Plaintiff is wrong in contending that the provision governing "errors" is ambiguous, and Defendant's and Zelle's terms state that they do not offer a purchase protection program. (*Id.* at 12-13.)

Fourth, Defendant argues that the Amended Complaint fails to state a claim for negligent misrepresentation because (based on the factual allegations of the Amended Complaint and the documents that may be considered incorporated by referenced in and/or integral to it) there is no special relationship between the parties, there is no allegation to support that a false representation exists, and there is no justifiable reliance because of Defendant's clear disclosures. (*Id.* at 13-14.)

8

## II.      RELEVANT LEGAL STANDARD

It has long been understood that a dismissal for failure to state a claim upon which relief

can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds:

(1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a

challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cnty.*, 549 F. Supp.2d

204, 211, nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on *de

novo* review).

Because such dismissals are often based on the first ground, some elaboration regarding

that ground is appropriate.  Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a

pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to

relief."  Fed. R. Civ. P. 8(a)(2) [emphasis added].  In the Court's view, this tension between

permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement

to relief is often at the heart of misunderstandings that occur regarding the pleading standard

established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain"

pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal."  *Jackson*, 549 F.

Supp.2d at 212, n.20 (citing Supreme Court case).  On the other hand, the Supreme Court has

held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ.

P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of

what the plaintiff's claim is and the grounds upon which it rests."  *Jackson*, 549 F. Supp.2d at

212, n.17 (citing Supreme Court cases) (emphasis added).[1]

---

[1]      *Accord, Flores v. Graphtex*, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (Munson, J.); *Hudson v.*

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp.2d at 212, n.18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F. Supp.2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp.2d at 213, n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 1968-69. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id*. at 1965-74. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the

---

*Artuz*, 95-CV-4768, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998); *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y.1995) (McAvoy, C.J.).

pleading must contain at least "some factual allegation[s]." *Id*. at 1965. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id*.

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Iqbal*, 129 S.Ct. at 1950 [internal quotation marks and citations omitted]. However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id*., it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 129 S.Ct. at 1949 (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. (citations omitted).

Finally, a few words are appropriate regarding what documents are considered when a dismissal for failure to state a claim is contemplated.  Generally, when contemplating a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the four corners of the complaint may be considered without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case.[2]

---

[2]     *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, No. 10-573, 2011 WL 2135734, at \*1 (2d Cir. June 1, 2011) (explaining that conversion from a motion to dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed. R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached to the complaint or answer, [2] documents incorporated by reference in the complaint (and provided by the parties), [3] documents that, although not incorporated by reference, are "integral" to the complaint, or [4] any matter of which the court can take judicial notice for the factual background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6) "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. . . .  Where a document is not incorporated by reference, the court may neverless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint. . . . However, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document.  It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.") [internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (internal quotation marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding [a] defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (internal quotation marks and citation omitted).

## III.    ANALYSIS

### A.    Whether Plaintiff Has Stated a Claim for Violation of the EFTA

After carefully considering the matter, the Court answers this question in the negative for

the reasons stated in Defendant's memoranda of law. *See, supra,* Part I.B. of this Decision and

Order.  To those reasons, the Court adds the following analysis (which is intended to supplement

and not supplant those reasons).

#### 1.    Whether Plaintiff's Transaction Was an "Error" as Defined by the EFTA

As indicated above in Part I.B. of this Decision and Order, Plaintiff argues that Defendant

owed a duty to the Plaintiff under the EFTA for "errors." Regulation E states as follows:

> § 1005.11 Procedures for resolving errors.
>
> (a) Definition of error—(1) Types of transfers or inquiries covered. The
> term "error" means:
> (i) An unauthorized electronic fund transfer;
> (ii) An incorrect electronic fund transfer to or from the consumer's
> account;
> (iii) The omission of an electronic fund transfer from a periodic statement;
> (iv) A computational or bookkeeping error made by the financial
> institution relating to an electronic fund transfer;
> (v) The consumer's receipt of an incorrect amount of money from an
> electronic terminal;
> (vi) An electronic fund transfer not identified in accordance with § 1005.9
> or § 1005.10(a); or
> (vii) The consumer's request for documentation required by § 1005.9 or §
> 1005.10(a) or for additional information or clarification concerning an
> electronic fund transfer, including a request the consumer makes to
> determine whether an error exists under paragraphs (a)(1)(i) through (vi)
> of this section.

12 CFR § 1005.11.

Plaintiff argues that the transaction at issue falls within "incorrect electronic fund

transfer" but cites no plausible factual allegations, relevant law or secondary materials to support

this argument.  The term "incorrect" is undefined in the statute or related regulation.  Plaintiff argues that, when the Court encounters an undefined term in a statute, it must give the term its plain meaning.  *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 566 (2012).  Although this term is undefined in the statute, the Consumer Financial Protection Bureau does provide examples which help identify what amounts to an "incorrect" transaction.  The examples illustrate transfers that send the incorrect amount of money or send funds to the incorrect recipient.  12 C.F.R. 1005.33, cmt. 33(f)(1) and Official Interpretation; Consumer Fin. Prot. Bureau, Supervisory Highlights, Issue 25, Fall 2021.

When scrutinized, this transaction is free or any error.  Plaintiff authorized Defendant to transfer $40 to a seller on Facebook Marketplace (a social media service with no legal affiliation to Defendant).  Defendant did precisely that.  The correct amount of money was transferred, to the correct recipient, and at the time requested by Plaintiff.  When applying the plain meaning of the terms, an error did not occur, and the transaction was not incorrect.

### 2.    Whether Plaintiff's Electronic Transfer of Funds Was "Unauthorized" Under the EFTA

The purpose of the EFTA is to "provide a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund and remittance transfer systems." 15 U.S.C. § 1693(b).  The EFTA states a bank's responsibilities in helping to recover a customer's unauthorized electronic fund transfers and liability for losses.  15 U.S.C. § 1693. Under the EFTA, an unauthorized transfer is defined as "an electronic fund transfer from a consumer's account initiated by a person other than the consumer without actual authority to initiate such transfer and from which the consumer receives no benefit."  15 U.S.C. §

14

1693(a)(12).

Here, Plaintiff saw an advertisement on Facebook Marketplace by a seller purporting to sell nonspecific "household goods."  Plaintiff then intentionally transferred $40 through Zelle to the individual, only then to be blocked on Facebook by the purported seller, and never receive the goods.  Again, Plaintiff intended to send money to the purported seller, the amount transferred ($40) was correct, and the funds made it safely to the purported seller.  (Dkt. No. 29.) This transaction was clearly authorized, and Plaintiff admits as to that fact.  (*Id*.)   Plaintiff's argument that a transaction made to a fraudster can never truly be authorized finds no support in the relevant statutes, regulations, or case law, or the plain meaning of the relevant terms.

Defendant, through its own contractual language, terms, and conditions, in addition to the contractual language and terms and conditions required for using Zelle services, made it clear that the services should only be used to send money to recipients you trust, and adequately warned of the risks of transferring money to complete strangers.  This language includes the following statements: (1) "THE SERVICE IS INTENDED TO SEND MONEY TO FRIENDS, FAMILY AND OTHERS YOU TRUST. YOU SHOULD NOT USE THE SERVICE TO SEND MONEY TO RECIPIENTS WITH WHOM YOU ARE NOT FAMILIAR OR YOU DO NOT TRUST."; (2) "You understand that once the payment is sent to another User, you will have no ability to cancel the payment.; (3) "NEITHER WE NOR ZELLE OFFER A PURCHASE PROTECTION PROGRAM FOR THE PURCHASE OF GOODS OR SERVICES; (4) IF YOU AUTHORIZE A PAYMENT USING ZELLE TO PAY FOR GOODS OR SERVICES AND YOU DO NOT RECEIVE THE GOODS OR SERVICES YOU PAID FOR . . . NEITHER WE NOR ZELLE OFFER PURCHASE PROTECTION OR OTHERWISE PROVIDE REFUNDS

OR DIRECT OTHER USERS TO REIMBURSE YOU FOR YOUR PURCHASE.";  (5) "You agree that you, not WE or ZELLE, are responsible for resolving any payment or other disputes THAT YOU HAVE with any other User with whom you send money to."  (Dkt. No. 48, Attach. 3.)

To deem this transaction "unauthorized" would essentially require Defendant (and, by affiliation, Zelle) to serve as a de facto insurer for all unwise internet monetary transactions associated with the accounts that Defendant services.  This is a drastic deviation from the agreed-upon terms between the parties, and such an interpretation is unsupported by the law.  Other courts have reviewed this issue and found that purposely transferring money to a fraudulent seller does not amount to an "unauthorized transaction" under the ETFA.  *See Aikens v. Portfolio Recovery Assocs., LLC*, 716 F. App'x 37, 40 (2d Cir. 2017) (affirming motion to dismiss holding that "a transfer is not 'unauthorized' under the EFTA when, the consumer furnished the 'means of access' to the bank account); *Merisier v. Bank of Am., N.A.*, 688 F.3d 1203, 1210 (11th Cir. 2012); *Tristan, et al v. Bank of America, N.A.*, 22-CV-01183, Order Granting in Part and Denying in Part Defendants' Motions to Dismiss (C.D. Cal. filed June 28, 2023); *In re Vistaprint Corp. Mktg. & Sales Practices Litig.*, 08-MD-1994, 2009 WL 2884727, at *9 (S.D. Tex. Aug. 31, 2009).  Although it is certainly unfortunate that this internet theft occurred, neither the EFTA nor the agreements between the parties requires Defendant to bear the responsibility for this outcome.

> ### 3.    Whether Defendant Adequately Investigated Plaintiff's Claims Under the EFTA

As indicated above in Part I.B. of this Decision and Order, Defendant argues that the EFTA requires banks to investigate and correct errors relating to electronic fund transfers when

notified of an error by a customer.  15 U.S.C. § 1693, et seq.  When a customer identifies an

error or an unauthorized transfer and then notifies his bank, the bank has a duty to "investigate

the alleged error, determine whether an error has occurred, and report or mail the results of such

investigation and determination to the consumer within ten business days."  15 U.S.C. §

1693f(a)(3)).  The bank shall correct any error "promptly, but in no event more than one business

day after such determination."  15 U.S.C. § 1693f(b)-(c).  If a bank does not comply it may be

liable for damages.  15 U.S.C. § 1693f(e), 1693m(a).  Regulation E states that a bank's review of

its own records satisfies its investigative obligations under the EFTA.  12 C.F.R. §

1005.11(c)(4)(i)-(ii).

Here, after Defendant was notified of the incident, it reviewed its own records, and

concluded that Plaintiff's transfer was authorized.  As previously stated, the Court concurs with

the assessment that this transaction was neither unauthorized nor erroneous per the EFTA, and

therefore finds that Defendant owed no further duty to investigate than the record review it

conducted.  For all these reasons, Plaintiffs claim under the EFTA must be dismissed.

### B.    Whether Plaintiff Has Stated a Claim for Breach of Contract

After carefully considering the matter, the Court answers this question in the negative for

the reasons stated in Defendant's memoranda of law.  *See, supra,* Part I.B. of this Decision and

Order.  To those reasons, the Court adds the following analysis (which is intended to supplement

and not supplant those reasons).

As indicated above in Part I.B. of this Decision and Order, Defendant argues that it has

not breached any provisions of its contract or the Account Disclosures with Plaintiff, because

neither contain language that Defendant would reimburse Plaintiff for authorized transfers to

fraudulent merchants. Plaintiff's argument in support of her breach of contract claim mirrors her (unsuccessful) argument in support of her claim under the EFTA. Plaintiff argues that Defendant's failure to reimburse her violated its contractual promise that "[w]e . . . will correct any error promptly." Plaintiff argues that the undefined term "error" can reasonably be interpreted to mean a "mistake" and covers those who are defrauded into transferring funds.

To state a claim for breach of contract, a plaintiff must provide specific allegations as to (1) an agreement between the parties, (2) the terms of that agreement, and (3) what provisions of the agreement were breached as a result of the acts of the defendant. *Valentini v. Citigroup, Inc.*, 837 F. Supp. 2d 304, 327 (S.D.N.Y. 2011). The Court is unconvinced by Plaintiff's argument that the term "error" can be interpreted to cover this incident. Plaintiff cites no plausible factual allegations  relevant case law to give the term such an expansive and non-literal meaning. The plain meaning of the term is clear. Defendant has committed to reimbursing customers when it makes a mistake in executing a transaction (such as a mistake in recipient, amount, or the time of the transaction), or if someone gains unauthorized access to a user's account and then makes a transaction in their name. Regretting an authorized transaction does not make it an error under the relevant contract. *Wilkins v. Navy Federal Credit Union*, 22-CV-2916, Opinion (D.N.J. filed Jan. 18, 2023). As was the case with the Court's evaluation of the term under the EFTA, this transaction was not an "error" in accordance with the contract between the parties. Plaintiff directed Defendant to send $40 to a particular seller, on a specific date, and Defendant complied with that request with no discrepancies.

**C.    Whether Plaintiff Has Stated a Claim for Breach of the Covenant of Good Faith and Fair Dealing**

After carefully considering the matter, the Court answers this question in the negative for

the reasons stated in Defendant's memoranda of law.  *See, supra,* Part I.B. of this Decision and Order.  To those reasons, the Court adds the following analysis (which is intended to supplement and not supplant those reasons).

As indicated above in Part I.B. of this Decision and Order, Defendant argues that Plaintiff's claim for a breach of the covenant of good faith and fair dealing is improper, because no separate cause of action exits where, as here, a breach of contract claim is also pled.  Plaintiff argues that the convent was breached when Defendant adopted an unreasonable and unfair understanding of the contract term "error" and when it adopted a "secret policy" that it would never reimburse customers for losses caused by fraud utilizing Zelle services.

An implied covenant of good faith and fair dealing is present in all contracts.  *Emerson Radio Corp. v. Orion Sales, Inc.*, 253 F.3d 159, 169-70 (3d Cir. 2001).  "New York law 'does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based on the same facts, is also pled.'"  *Kelly v. Cmty. Bank, N.A.*, No. 19-CV-919, 2020 WL 777463, at *7 (N.D.N.Y. 2020); *Cordell v. McGraw-Hill Companies, Inc.,* 525 F. App'x 22, 23 (2d Cir. 2013).  The "duty [of good faith] does not permit us to write into the Agreement obligations that do not exist*." Drummond Coal Sales, Inc. v. Norfolk S. Ry.,* 3 F.4th 605, 611–12 (4th Cir. 2021).

Plaintiff's argument rests on whether Defendant arbitrary defined the term "error" from their contract, and whether Defendant withheld a "secret policy" to never reimburse clients for fraud that occurs from Zelle transactions.  As stated previously, both arguments fail. Defendant's application of the term error is consistent with the law and the plain meaning of the term in the contract, whereas Plaintiff's proposed definition would have the term encompass all

unwise purchases made by customers while using Zelle.  As for the alleged "secret policy," there is no secret (based on the Amended Complaint and documents incorporated by reference in and/or integral tp it).  Plaintiff has submitted no factual allegations plausibly suggesting that Defendant ever agreed to insure or reimburse the losses of authorized transactions made to fraudulent merchants.  The fact that such a commitment does not exist in the contract, or the Account Disclosures, makes Defendant's decision not to reimburse Plaintiff anything but a secret.  Plaintiff has not identified a term of a contract or agreement that Defendant violated, expressly or in spirit.  The covenant of good faith, although applicable in all contracts, cannot change the express terms of a contract.  No protection was promised for the incident that occurred.

**D.      Whether Plaintiff Has Stated a Claim for Violation of Section 349 of the New York General Business Law**

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendant's memoranda of law.  *See, supra,* Part I.B. of this Decision and Order.  To those reasons, the Court adds the following analysis (which is intended to supplement and not supplant those reasons).

As indicated above in Part I.B. of this Decision and Order, Defendant argues that its compliance with Regulation E provides a complete defense against Plaintiff's Section 349 claim.  Plaintiff argues that Defendant's statements and marketing materials regarding the safety and security of Zelle was materially misleading due to Zelle's pervasive and inherent vulnerability to fraud.

Section 349 of the New York general Business Law expressly covers "[d]eceptive acts or practice in the conduct of any business, trade or commerce or in the furnishing of any service in

20

this state." N.Y. Gen. Bus. Law § 349(a). To state a claim under Section 349 for deceptive acts

and practices, a plaintiff must allege facts plausibly suggesting the following: (1) the act or

practice was consumer-oriented; (2) the act or practice was misleading in a material respect; and

(3) the plaintiff was injured as a result of those acts or practices. *Spagnola v. Chubb Corp.,* 574

F.3d 64, 74 (2d Cir.2009); *Toth v. 59 Murray Enters., Inc.,* 2019 WL 95564, at *13 (S.D.N.Y.

2019). The term "deceptive practices" can be defined as a representation or omission that "must

be likely to mislead a reasonable consumer acting reasonably under the circumstance."

*Spagnola,* 574 F.3d at 74; *Casey v. Citibank, N.A.*, 915 F.Supp.2d 255, 266 (N.D.N.Y. 2013);

*Krobath v. S. Nassau Communities Hosp.*, 115 N.Y.S.3d 389, 392-93 (2d Dep't 2019); *Boule v.*

*Hutton*, 328 F.3d 84, 93-94 (2d Cir.2003). The term "consumer-oriented" is understood to mean

that a plaintiff must demonstrate that the acts or practices have a "broader impact on consumers

at large." *Koch v. Greenberg*, 626 F. App'x 335, 340 (2d Cir. 2015); *DeAngelis v. Corzine*, 17

F.Supp.3d 270, 284 (S.D.N.Y. 2014); *Oswego Laborers' Local 214 Pension Fund v. Marine*

*Midland Bank, N.A.*, N.E.2d 741, 744 (1995). To state an omission-based claim, a plaintiff must

allege that the defendant possessed material information and failed to disclose said information.

*Cummings v. FCA US LLC*, 401 F. Supp. 3d 288, 307 (N.D.N.Y. 2019).

Under Section 349(d), a defendant may have a complete defense to a claim if its practices

are in compliance with applicable statutes and regulations. The applicable section states as

follows:

> (d) In any such action it shall be a complete defense that the act or
> practice is, or if in interstate commerce would be, subject to and
> complies with the rules and regulations of, and the statutes
> administered by, the federal trade commission or any official
> department, division, commission or agency of the United States as such
> rules, regulations or statutes are interpreted by the federal trade

21

> commission or such department, division, commission or agency or the
> federal courts.

N.Y. Gen. Bus. Law § 349(d). *see also Green v. SweetWorks Confections, LLC,* 18-CV-0902,
2019 WL 3958442, at *4 (S.D.N.Y. 2019); *Manchanda v. Educ. Credit Mgmt. Corp.*, 19-CV-
5121, 2022 WL 137885 (S.D.N.Y. 2022).

      Regulation E "establishes the basic rights, liabilities, and responsibilities of consumers
who use electronic fund transfer and remittance transfer services and of financial institutions or
other persons that offer these services." 12 C.F.R. § 1005.1. Deceptive acts or practices are
those actions "likely to mislead a reasonable consumer acting reasonably under the
circumstances." *Miller v. Wells Fargo, N.A.*, 994 F. Supp. 2d 542, 557 (S.D.N.Y. 2014). The
"term 'deceptive practice' in Section 349 [has been] interpreted to mean acts which are dishonest
or misleading in a material respect." *Kelly v. Cmty. Bank, N.A.*, 19-CV-0919, 2020 WL 777463,
at *9 (N.D.N.Y. 2020). To be materially misleading, the alleged practice "must be 'likely to
mislead a reasonable consumer acting reasonably under the circumstances.'" *Zottola v. Eisai
Inc.*, 564 F. Supp. 3d 302, 312 (S.D.N.Y. 2021).

      The Court has highlighted some of the disclosures and warnings from Defendant and
Zelle above in Part II.A.2. of this Decision and Order. What is clear is that Defendant claimed,
and advertised that its product, Zelle, is safe when it is used as designed, to send funds
electronically to trusted recipients. (Dkt. No. 48, Attach. 3.) Defendant gave explicit warnings
of the financial danger that could ensue if those directions were not followed and further stated
that it does not offer a purchase protection program, which is exactly what Plaintiff seeks here.
(*Id.*) Plaintiff argues that its transaction with Zelle was not secure and safe. Quite to the
contrary, Defendant safely, securely, and quickly delivered $40 to the account Plaintiff intended

the funds to be transfer to.  Plaintiff has produced no factual allegations plausibly suggesting

deception in Zelle's disclosures and marketing materials regarding safety and security when the

service is used as intended.  All Plaintiff has adduced are general allegations regarding the risks

of sending money to strangers, which is an inherent (although unfortunate) risk of the digital

commercial world that we live in.  Plaintiff further argues that Defendant's unwillingness to

reimburse her for the theft that occurred was a "secret policy" when it was anything but.  Zelle

Terms and Conditions expressly warn users as follows;

> NEITHER WE NOR ZELLE OFFER A PURCHASE PROTECTION
> PROGRAM FOR THE PURCHASE OF GOODS OR SERVICES. IF
> YOU AUTHORIZE A PAYMENT USING ZELLE TO PAY FOR
> GOODS OR SERVICES AND YOU DO NOT RECEIVE THE GOODS
> OR SERVICES YOU PAID FOR . . . NEITHER WE NOR ZELLE
> OFFER PURCHASE PROTECTION OR OTHERWISE PROVIDE
> REFUNDS OR DIRECT OTHER USERS TO REIMBURSE YOU FOR
> YOUR PURCHASE.

(Dkt. No. 48, Attach. 3.)

Finally, based on the Amended Complaint's own factual allegations (and the documents

incorporated by reference in and/or integral to it), there is no casual nexus between Defendant's

advertisements and disclosures and Plaintiff's monetary loss.  The cause of Plaintiff's loss was

the criminal acts of a third party on a social media platform that Defendant had no control over.

For all of these reasons, Plaintiff's claim under N.Y. Gen. Bus. Law § 349 must be

dismissed.

### E.    Whether Plaintiff Has Stated a Claim for Negligent Misrepresentation

After carefully considering the matter, the Court answers this question in the negative for

the reasons stated in Defendant's memoranda of law.  *See, supra*, Part I.B. of this Decision and

Order.  To those reasons, the Court adds the following analysis (which is intended to supplement

and not supplant those reasons).

As indicated above in Part I.B. of this Decision and Order, Defendant argues that Plaintiff's claim for negligent misrepresentation must fail because Plaintiff has not alleged sufficient facts that a special relationship existed between the parties.   Plaintiff argues that a special relationship did in fact exist as Defendant had exclusive knowledge of the inherent risks of using Zelle and it failed to disclose its "secret policy" that it would not reimburse clients for fraud.

To state a claim for negligent misrepresentation, "a plaintiff must plead facts showing (1) the defendant owed plaintiff a duty of care due to a special relationship; (2) the defendant knew or should have known that [its] representations were false; (3) the defendant knew or should have known that the [plaintiff] would rely on those misrepresentations; and (4) the plaintiff in fact relied on those misrepresentations to [his] detriment." *Nelson v. MillerCoors, LLC*, 246 F. Supp. 3d 666, 677 (E.D.N.Y. 2017).

To determine if a special relationship exists, the following three factors are considered: (1) whether the person making the representation held or appeared to hold unique or special expertise; (2) whether a special relationship of trust or confidence existed between the parties; and (3) whether the speaker was aware of the use to which the information would be put and supplied it for that purpose. *Kimmell v. Schaefer,* 89 N.Y.2d 257, 264 (1996); *Suez Equity Investors, L.P. v. Toronto–Dominion Bank*, 250 F.3d 87, 103 (2d Cir. 2001).   However, if the duty between parties was established through a contract, then any misrepresentation must be pled as a claim of breach of contract, and not for negligent misrepresentation.  *JP Morgan Chase Bank v. Winnick*, 350 F.Supp.2d 393, 404 (S.D.N.Y. 2004).

24

Here, Plaintiff tries to repackage its prior arguments of contractual and statutory breach under yet another cause of action.  The typical contract between bank and client does not give rise to a special relationship.  *Congress Fin. Corp. v. John Morrell & Co.*, 790 F. Supp. 459, 474 (S.D.N.Y. 1992) ("Banking relationships … are generally not viewed by courts as special relationships giving rise to a heightened duty of care"); *Phoenix Cos. v. Concentrix Ins. Admin. Sols. Corp.*, 20-CV-1738, 2021 WL 3604663, at *12 (S.D.N.Y. 2021).  Plaintiff's arguments that Defendant failed to disclose security issues with Zelle and the existence of a "secret" non-reimburse policy are equally as unavailing under a tort cause of action.  No special relationship existed between the parties, and Plaintiff has failed to allege facts plausibly suggesting a misrepresentation by Defendant.

**F.      Whether Plaintiff Has Stated a Claim of Unjust Enrichment**

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendant's memoranda of law.  *See, supra*, Part I.B. of this Decision and Order.  To those reasons, the Court adds the following analysis (which is intended to supplement and not supplant those reasons).

As indicated above in Part I.B. of this Decision and Order, Defendant argues that Plaintiff's cause of action is barred as a matter of law because (1) Plaintiff cannot assert a claim based on implied contract theory where (as here) an express contract exists between the parties, and (2) Defendant was never enriched at Plaintiff's expense.  Plaintiff alleges in her Amended Complaint that Defendant's failure to reimburse Plaintiff for the $40 she sent to a fraudulent merchant qualified as unjust enrichment. (Dkt. No. 29.)  However, Plaintiff did not respond to Defendant's arguments regarding this claim in her opposition memorandum of law.  (Dkt. No.

37.)

To state a claim for unjust enrichment, Plaintiff must allege facts plausibly suggesting that (1) the defendant was enriched, (2) at the plaintiff's expense, and (3) that it is against equity and good conscience to permit the defendant to retain what the plaintiff seeks to recover. *Mandarin Trading Ltd. v. Wildenstein*, 884 N.Y.S.2d 47, 51 (N.Y. App. Div., 1st Dep't 2009); *Sucesores de Don Carlos Nuñez y Doña Pura Galvez, Inc. v. Société Générale, S.A.*, 577 F.Supp.3d 295, 309 (S.D.N.Y. 2021). Additionally, the benefit received by the defendant must be "specific and direct", as opposed to "indirect". *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000). Because an unjust enrichment claim is part of quasi-contract theory "the existence of a contract generally bars recovery" *Agerbrink v. Model Serv. LLC,* 155 F. Supp. 3d 448, 459 (S.D.N.Y. 2016) (citing *IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 12 N.Y.3d 132, 142 (2009) ("Where the parties executed a valid and enforceable written contract governing a particular subject matter, recovery on a theory of unjust enrichment for events arising out of that subject matter is ordinarily precluded.")); *Zam & Zam Super Mkt., LLC v. Ignite Payments, LLC,* 16-CV-6370, 2017 WL 6729854, at *22 (E.D.N.Y. 2017).

Here, based on the Amended Complaint's own factual allegations (and the documents incorporated by reference in and/or integral to it), an express contract existed between the parties. Plaintiff directly cites a clause in that contract to support its unjust enrichment claim. (Dkt. No. 37.) It is evident that Plaintiff's unjust enrichment claim arises from the contract between the parties, and therefore the claim is improper. In addition, Defendant never agreed to reimburse Plaintiff for authorized electronic transactions to fraudulent merchants, so its refusal to reimburse Plaintiff was not unjust. Finally, Defendant received no monetary gain from the

fraudulent merchant stealing $40 from Plaintiff.  This unfortunate incident did not enrich

Defendant at all, let alone unjustly.

       **ACCORDINGLY,** it is

       **ORDERED** that Defendant's motion to dismiss (Dkt. No. 32.) is **<u>GRANTED</u>**; and it is

further

       **ORDERED** that Plaintiff's Amended Complaint (Dkt. No. 29) is **<u>DISMISSED.</u>**

Dated:  September 28, 2023
       Syracuse, New York

Glenn T. Suddaby
U.S. District Judge

27